THE CITY OF JOLIET, Plaintiff-Appellee, *v.* MARILYN J. SCHMIDT, Defendant-Appellant.

Third District No. 75-175

Opinion filed February 19, 1976.

Thomas, Wallace, Feehan & Baron, Ltd., of Joliet (William T. Kaplan, of counsel), for appellant.

Thomas Monahan, Assistant Corporation Counsel, of Joliet, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by Marilyn J. Schmidt from a judgment of the Circuit Court of Will County, in a bench trial, finding her guilty of resisting or obstructing a police officer in violation of article IV, section 21—51 of the Joliet City Code. The defendant was fined $70 plus $5 court costs.

On appeal in this court, defendant contends that the evidence was insufficient to show any conduct on her part which falls within the prohibitions of the ordinance. The wording of the city ordinance is apparently substantially the same as the language specified for a parallel statutory

crime in the Illinois State statutes (Ill. Rev. Stat. 1973, ch. 38, §31—1). That Act defines one who violates that section as one who "knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity."

At the trial, the evidence disclosed that officers Hopkins and Schelling of the Joliet City Police stopped defendant for speeding, when they clocked her automobile at 75 miles per hour on a city street at 12:30 a.m. on October 17, 1974. The officers had seen the automobile, parked at the curb with its hazard lights blinking and had pulled up behind to investigate or assist. The automobile immediately took off and proceeded at a high rate of speed down the street, until the officers managed to stop defendant. Defendant testified that she was waiting for a friend to drive by on his way home from a bar, where they had been socializing with other friends, because she wanted to talk to him. She said he went by just as the officers pulled up behind her and she took off after him, since she was upset that he did not stop. Officer Hopkins testified that after he had stopped defendant he left his vehicle and went to the driver's window of defendant's car. He asked for her driver's license and was handed a packet of cards from her billfold. When he returned the packet and said he needed only the driver's license, he states she swore at him and said she would not try to bribe him in that way. Defendant denied swearing at the officer.

Hopkins said that when he got the license he noted that it contained a vision restriction and that defendant wore no eye glasses. When he inquired about this, defendant quickly removed a contact lens from one eye and handed it to him, saying that she wore contacts and that he could have them if he needed proof. Officer Hopkins told her that it would not be necessary and returned to the squad car to write out the speeding citation.

The officer testified that while he was writing the ticket, defendant came back to the squad car, and, using obscenities, told the officers that they had made a mistake by not asking her for a bond card. She then proceeded to empty the contents of her purse on the hood of the squad car, rummaged for the bond card, and then threw it in the window of the squad car at the officer. Defendant, however, denied that she had used any profanity. Officer Hopkins stated that at this point he informed defendant that she was under arrest for disorderly conduct, and that he immediately left the car, as she was turning away, and took her by the arm. Defendant, however, stated that Hopkins left the automobile without a word, grabbed her by the arm, and announced that she was under arrest for driving under the influence of intoxicating liquor. Defendant tried to turn around as Hopkins took her arm. He testified that she

struggled to get free and kicked him in the shins several times. Defendant, however, stated she did not kick the officer and was only trying to find out why the officer had suddenly grabbed her arm.

Officer Schelling left the passenger side of the squad car and aided his partner in bringing defendant under control and placing handcuffs on her. He testified at the trial that defendant and Hopkins had engaged in a "scuffle" after Hopkins left the car and corroborated what Officer Hopkins had testified to.

■■ Defendant argues that she had a right to inquire of the officers and discover the reason for the arrest that Officer Hopkins announced after she tossed the bond card in his window. She claimed she was merely trying to turn around when the officer grabbed her arm and that she did not interfere with the officer's performance of duty by going limp or trying to leave the scene. Defendant cites and compares the case of *People v. Flannigan* (5th Dist. 1971), 131 Ill. App. 2d 1059, 267 N.E.2d 739. In that case the driver jerked his arm out of the policeman's grasp while arguing about a reckless driving charge. The court in *Flannigan* observed that while the conduct of defendant was "not admirable," "not a paragon of cooperation,'" and "an insubstantial display of antagonism or belligerence" it did not amount to a physical interference with the police in the performance of their duties. It is stated in *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, that the standard of conduct proscribed by the ordinance is more than mere stubbornness and argument but is a physical act which impedes, hinders, interrupts, prevents or delays the performance of the officer's duties. See also *People v. Raby* (1968), 40 Ill. 2d 392, 240 N.E.2d 595.

■■ In the case before us, the trial court apparently believed the testimony of the officers when it conflicted with the testimony of the defendant and, apparently, believed that defendant did in fact physically resist the attempts of the officers to place her under arrest following the incident with the bond card. As noted in *People v. Carroll* (1st Dist. 1971), 133 Ill. App. 2d 78, 80-81, 272 N.E.2d 822, regardless of how outraged a citizen may be at the attempt of the police officer to arrest him or how mistaken he thinks the officer is "an accused may not physically resist the arrest." He may inquire as to his reasons; he may point out the officer's mistakes; he may protest and argue; but, he may not impede the arrest by physical action. The public interest in discouraging violence and in insisting on the use of peaceable methods of obtaining release from unlawful custody outweighs the outrage felt by an individual who is subjected to unlawful police conduct.

■■ We, therefore, have before us a question of fact in the evaluation of conflicting testimony. On the basis of the officer's version, a conviction

would be justified. On the basis of defendant's version, defendant should have been found not guilty. Since the trial court heard and saw the parties, and the officer's testimony was clearly not unreasonable, the action of the trial court in accepting such testimony cannot be rejected by us. *People v. Haskell* (1968), 41 Ill. 2d 25, 30, 241 N.E.2d 430.

For the reasons stated, we find that there is sufficient evidence in the record to sustain the conviction of defendant by the trial court. The judgment of the Circuit Court of Will County is affirmed.

Affirmed.

STENGEL and BARRY, JJ., concur.