**STATE of Iowa, Appellee,**

v.

**Gary Dean WHITE, Appellant.**

**No. 97–2052.**

Supreme Court of Iowa.

Dec. 23, 1998.

Linda Del Gallo, State Appellate Defender, and Christopher Cooklin, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, John P. Sarcone, County Attorney, and John Courter, Assistant County Attorney, for appellee.

SNELL, Justice.

This case considers the validity of defendant's guilty plea. The specific point raised is whether the guilty plea by defendant was made voluntarily, intelligently, and understandingly, as required by our rules of criminal procedure and constitutional standards. Defendant asserts it was not because he was not informed that the maximum punishment that could be imposed included consecutive sentences. We agree the plea was invalid and therefore reverse and remand.

Gary Dean White pled guilty to two offenses of possession of methamphetamine with intent to deliver, in Iowa classified as class "C" felonies. *See* Iowa Code § 124.401(1)(c)(6) (1997). The plea was pursuant to a plea bargain with the State which reduced the charges from class "B" felonies. *Id.* § 124.401(1)(b)(7). The sentencing judge ordered the defendant to serve ten years in prison for each offense and fined the defendant $1000 for each offense. The court advised that by operation of law a mandatory one-third minimum must be served. Next, the court ordered that the sentences be served consecutively.

The record shows that defendant was never advised of the possibility of consecutive sentences being imposed, either by the judge or by any other source. Defendant claims that for this reason his rights under guilty plea procedures established by Iowa statutes and the United States Constitution have been violated and he should consequently be allowed to withdraw his guilty plea. The defendant's argument is sound and he should be permitted to plead anew.

Iowa Rule of Criminal Procedure 8(2)(b) states:

> b. Pleas of guilty. The court may refuse to accept a plea of guilty, and shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis. Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> (1) The nature of the charge to which the plea is offered.
>
> (2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered.

Our focus is on the language and import of Rule 8(2)(b)(2).

Our appellate review standard in this case is for errors of law. Iowa R.App. P.

4. We have held that substantial compliance is the measure for judging whether the requirements of Rule 8(2)(b)(2) have been met. *State v. Kirchoff*, 452 N.W.2d 801, 804 (Iowa 1990).

The constitutional standards for acceptance of a guilty plea have been established by several United States Supreme Court cases. In *Jackson v. Denno*, 378 U.S. 368, 387, 84 S.Ct. 1774, 1786, 12 L.Ed.2d 908, 922 (1964), the Supreme Court decided that admissibility of a confession must be based on "a reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant."

The Supreme Court later applied the same standard to acceptance of guilty pleas:

> The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. In *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70, we dealt with a problem of waiver of the right to counsel, a Sixth Amendment right. We held: "Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."
>
> We think that the same standard must be applied to determining whether a guilty plea is voluntarily made. For, as we have said, a plea of guilty is more than an admission of conduct; it is a conviction. Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality. The question of an effective waiver of a federal constitutional right in a proceeding is of course governed by federal standards. *Douglas v. Alabama*, 380 U.S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934.

*Boykin v. Alabama*, 395 U.S. 238, 242–43, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969).

■ Our court has recognized the standard set forth in *Jackson* and *Boykin*:

> The requirement of voluntariness stems from the due process mandate that a waiver of constitutional rights, which is implicit in guilty pleas, must be made voluntarily. *McCarthy [v. United States]*, 394 U.S. at 466, 89 S.Ct. at 1171, 22 L.Ed.2d at 425. To be truly voluntary, the plea must not only be free from compulsion, but must also be knowing and intelligent. *See Henderson v. Morgan*, 426 U.S. 637, 645 & n. 13, 96 S.Ct. 2253, 2257–58, 49 L.Ed.2d 108, 114 (1976); *McCarthy*, 394 U.S. at 466, 89 S.Ct. at 1171, 22 L.Ed.2d at 425. Thus, the defendant should be cognizant of the constitutional protections to which he would otherwise be entitled, *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279–80 (1969), and the nature of the crime with which he is charged, *Smith v. O'Grady*, 312 U.S. 329, 332–34, 61 S.Ct. 572, 573–74, 85 L.Ed. 859, 861–62 (1941).

*State v. Fluhr*, 287 N.W.2d 857, 863 (Iowa 1980).

In 1976 and 1977, the Iowa legislature enacted standards for arraignments and the court's acceptance of a defendant's guilty plea, which are now contained in the Iowa Rules of Criminal Procedure. *See* Iowa R.Crim. P. 8. Iowa Rule of Criminal Procedure 8(2)(b) provides that "the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands . . . the maximum possible punishment provided by the statute defining the offense to which the plea is offered." Defendant claims that the words "maximum possible punishment" in Rule 8 mean and require, to be consistent with the constitutional requirements, that he be advised and understand that his guilty plea may result in the imposition of consecutive sentences for his two convictions. It is clear from the language used in Rule 8 and its obvious purpose to recognize rights of defendants, that constitutional rights are implicated. In fact, we have previously said that a defendant's constitutional rights are specified in Rule 8(2)(b). *See Fluhr*, 287 N.W.2d at 861.

The Supreme Court has held that the accused must be fully aware of the direct consequences of a guilty plea. *Brady v. United States*, 397 U.S. 742, 755, 90 S.Ct. 1463, 1472,

25 L.Ed.2d 747, 760 (1970). Sentences to be served consecutively are a direct consequence of a guilty plea. We are not here concerned with the much adjudicated distinction between direct and collateral consequences. *See, e.g., State v. Carney,* 584 N.W.2d 907, 908–09 (Iowa 1998).

Nor does the result here depend on whether it is the judge's responsibility to advise the defendant that "maximum possible punishment" means consecutive sentences are possible or whether defendant's knowledge and understanding can be gleaned from other indicia in the record. *See Kirchoff,* 452 N.W.2d at 804–05; *Fluhr,* 287 N.W.2d at 863–64; *State v. Reaves,* 254 N.W.2d 488, 493 (Iowa 1977); *Brainard v. State,* 222 N.W.2d 711, 715 (Iowa 1974); *State v. Sisco,* 169 N.W.2d 542, 550 (Iowa 1969).

■ In the instant case no statement about possible consecutive sentences was made by the judge to the defendant. Also, the record is silent as to any advice to defendant by his attorney or from any other source that consecutive sentences were possible if he pled guilty.

The record discloses that at the hearing during which the guilty plea was accepted there was no advice or discussion of consecutive sentences by the judge or defendant's lawyer, nor was there any other evidence introduced that shows defendant's awareness of the possibility of consecutive sentences or even any knowledge of how a concurrent sentence differed from a consecutive sentence. No information from any source indicated to the defendant in any way that his maximum possible punishment was twenty years of imprisonment as a result of sentences imposed to be served consecutively. The guilty plea was accepted from a silent record on this matter.

The sentencing hearing occurred six weeks later. At that hearing the record again discloses that no information concerning the possibility of consecutive sentences was communicated to the defendant. In fact, the defendant was probably misled, as well as being unadvised, by the discussion about concurrent sentences during the hearing. The prosecutor advised the judge that pursuant to the plea agreement, the State recommended that the sentences run concurrently to each other. Remaining counts in both criminal matters were to be dismissed along with two misdemeanor files. The prosecutor next agreed with defendant's counsel that pursuant to the plea agreement the State recommended that the sentences in the Polk County cases run concurrently with a case against defendant in Boone County.

After this presentation to the court, extended discussion ensued on whether defendant could be released with his bond continued prior to sentencing. Defendant personally pleaded with the court for a two-week period to locate a place for his wife to live and make arrangements for his four dependent children, including a new baby. Defendant's counsel argued this matter as well. The judge listened to these arguments and then inquired of the prosecutor and the defendant's counsel if either would like to make any further record. Both attorneys said no. The record was thereupon closed without the possibility of consecutive sentencing ever being mentioned by anyone. Although the matters discussed at the sentencing hearing had relevance in the context of the plea agreement's contents and the defendant being released on bond, the focus on these matters effectively diverted any understanding by defendant of the maximum possible punishment. Adding to the likelihood of defendant's lack of understanding of the maximum possible punishment, by being unadvised or misled, is the circumstance that the trial court, when taking defendant's guilty plea and when conducting the sentencing hearing, never told the defendant that the court was not bound by any agreement between the prosecutor and the defendant or defendant's counsel regarding a plea of guilty. The first time defendant ever heard of consecutive sentences which added up to twenty years imprisonment was when they were imposed on him.

In *United States v. Williams,* 407 F.2d 940, 948–49 (4th Cir.1969), it was said:

"We think that plea bargaining serves a useful purpose both for society and the prisoner and is a permanent part of the

criminal courtroom scene, but we think that it ought to be brought out into the open. We do not suggest that defense counsel and the prosecutor actually conduct their negotiations in open court but we do urge that in this circuit a full and complete disclosure of such negotiations be announced to the court and made a part of the record. The matter is, after all, public business, and we deplore the hypocrisy of silent pretense that it has not occurred...." [Emphasis removed.]

... The court must then inquire of the defendant if the purported bargain is as he understood it to be when making his plea decision. The court must explain the bargain's effect with respect to maximum sentence and its effect on concurrent or consecutive sentencing, if that be a part of the bargain, and all other aspects of the agreement must be reviewed by the court with the defendant. The court must make known to the defendant whether there is anything about the bargain which is abhorrent to the court or which violates any aspect of the sentence which the court intends to impose. If the bargain purports to improperly bind the court, the defendant should know this and should be told that the court will not be bound by any such impropriety.

In other words, every aspect of the bargain and the court's reaction to it should be reviewed at the Bar on the record before the plea is received so that the record will forever reflect that it was made voluntarily by the defendant and with a full understanding of its consequences.

*Cardenas v. Meacham*, 545 P.2d 632, 639–40 (Wyo.1976).

On the question of what a defendant understands, the Wyoming Supreme Court stated:

".... Inherent in the 'plea bargaining' process is the possibility of a misunderstanding on the part of the participants as to possible consequences of a guilty plea. The defendant is often told by his attorney that a 'promise' of a certain sentence has been made in exchange for his plea of guilty when, in fact, the 'promise' has come from one, such as the prosecutor, who is in no position to make promises concerning sentencing or has been made by the trial judge in terms of 'probably', 'maybe', or I am inclined toward'. These 'promises' are occasionally communicated to defendants as firm deals. When the defendant is induced to plead guilty on the basis of his misinterpretation of the 'promise', the plea may, in certain cases, be invalid because it was based on incomprehension or misinterpretation."

*Cardenas*, 545 P.2d at 638–39 (emphasis removed) (quoting *United States v. Frontero*, 452 F.2d 406, 411 (5th Cir.1971)).

Defendant's contention has been accepted in other jurisdictions. Several jurisdictions have concluded that in order for a defendant to knowingly and voluntarily enter a guilty plea, he or she must be informed of the possibility of consecutive sentences as part of the information imparted when revealing the maximum possible sentence. In *Commonwealth v. Persinger*, 532 Pa. 317, 615 A.2d 1305 (Pa.1992), the Pennsylvania Supreme Court concluded that when informing a defendant of the maximum possible sentence, the court must advise the defendant as to the total possible aggregate sentence which may be imposed as a result of consecutive sentencing. The defendant entered a plea of guilty to nine counts of bad checks and one count of theft by deception. During the colloquy, the court informed the defendant of the maximum possible sentence for each offense, but did not inform him the sentences could be imposed consecutively. The court imposed consecutive sentences. *Persinger*, 615 A.2d at 1306.

On appeal, the defendant argued his trial counsel was ineffective for failing to file a motion to withdraw the guilty plea. Pennsylvania's rules of criminal procedure require the sentencing court to determine whether "the defendant [is] aware of the permissible range of sentences and/or fines for the offenses charged." *Id.* at 1307. In concluding that the sentencing court erred in not disclosing that the sentences could be ordered to run consecutively, the court stated:

The goal sought to be attained by the guilty plea colloquy is assurance that a

defendant's guilty plea is tendered knowingly, intelligently, voluntarily and understandingly. A defendant obviously cannot be expected to plead intelligently without understanding the consequences of his plea. In order to understand the consequences of his plea it is clear that a defendant must be informed of the *maximum* punishment that might be imposed for his conduct. To hold that the term "maximum" does not include the total possible aggregate sentence is clearly incorrect. And to hold that a plea was intelligently and understandingly entered where a defendant was not informed that consecutive sentences could be imposed upon his multiple convictions is equally incorrect.

*Id.* at 1308 (citations omitted).

The court cited the American Bar Association Standards for Criminal Justice in support of its holding, even though the commonwealth of Pennsylvania does have comprehensive rules of criminal procedure governing the colloquy which must take place before the entry of a guilty plea. *See* III American Bar Association, *Standards for Criminal Justice*, std. 14–1.4 (2d ed.1980). Standard 14–1.4 explicitly requires the court to inform the defendant of the possibility of consecutive sentences. With regard to the ABA Standards, the court noted:

We believe that the reasoning behind this standard is sound, for this approach will help to assure that the defendant appreciates the significance and consequences of his plea and that once entered the plea will withstand post-sentencing attack. Requiring the trial court to tell the defendant that the sentences may be imposed consecutively and what the total aggregate sentence could be will not significantly lengthen the colloquy or place any undue burden on the court.

*Persinger*, 615 A.2d at 1308.

In *People v. Flannigan*, 131 Ill.App.2d 1059, 267 N.E.2d 739 (Ill.App.Ct.1971), the defendant was found guilty of resisting a peace officer and also entered a plea of guilty to a charge of reckless driving, second offense. The court sentenced him to terms of one year and six months, respectively, to be served consecutively. The defendant appealed, contending that the trial court failed to fully advise him of the consequences of his plea by not advising him the sentences for the convictions could be imposed consecutively. *Flannigan*, 267 N.E.2d at 740. Illinois law provided that a guilty plea may be accepted when " 'the court has informed the defendant of the consequences of his plea and of the maximum penalty provided by law which may be imposed upon acceptance of such plea.' " *Id.* at 743 (quoting 38 Ill.Rev. Stat. § 1152(a)(2) (1969)). The court found:

Where a defendant is charged with more than one crime, the manner in which he may have to serve the sentences imposed for those crimes, whether consecutively or concurrently, is obviously a consequence of his plea, and must be considered as crucial to his decision as the admonition on the maximum penalty for each of the charges.

*Id.* at 744.

As authority for its conclusion, the court noted a new state law, which took effect after the defendant's plea, which defined "maximum penalty" to include " 'the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences.' " *Id.* (quoting 110A Ill.Rev.Stat. § 402(a)(2)). The court also cited the ABA Standards for Criminal Justice as support for its holding.

Other jurisdictions have reached the same conclusion as that reached by Pennsylvania and Illinois. *See People v. Peters*, 738 P.2d 395, 395–96 (Colo.Ct.App.1987) (noting previous Colorado Supreme Court decision in which it was held that the ABA Standards relating to guilty pleas closely tracked existing Colorado law and thus concluding defendant should have been apprised of the possibility of consecutive sentences); *State v. Collins*, 176 Conn. 7, 404 A.2d 871, 872–73 (Conn.1978) (holding that, for guilty plea to be knowing and voluntary, defendant must be informed of possibility of consecutive sentences in order to achieve full apprisal of consequences of plea); *State v. Flummer*, 99 Idaho 567, 585 P.2d 1278, 1279–80 (Idaho 1978) (concluding that in order for plea to comport with constitutional principles, the

defendant must be aware of possibility of consecutive sentences; although court did not inform defendant at entry of plea, court and counsel discussed possibility in presence of defendant at sentencing hearing, giving him opportunity to withdraw plea); *State v. Ricks*, 53 Ohio App.2d 244, 372 N.E.2d 1369, 1371 (Ohio Ct.App.1977) (finding that understanding of maximum possible penalty "should include information as to whether defendant is eligible for consecutive or concurrent sentences"); *People v. Verderosa*, 80 A.D.2d 930, 437 N.Y.S.2d 783, 784 (App. Div.1981) ( "[F]ailure of the sentencing court to inform defendant, in response to his question, that the law required that a consecutive sentence be imposed requires a reversal of defendant's conviction.").

In *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879 (Neb.1986), three justices dissented from the majority's conclusion that the defendant need not be told of the possible imposition of consecutive sentences in order for the plea to be knowing and voluntary. The dissent argued as follows:

> Duration of incarceration unquestionably goes to the very heart of voluntariness required for a valid waiver of a defendant's right to trial on the charge alleged, as well as the voluntariness of a defendant's waiver of the other rights to be accorded....
>
> It is virtually self-evident that a defendant's decision to plead guilty or nolo contendere to a criminal charge is a grave and personal judgment, which a defendant should not be allowed to enter without full comprehension of possible consequences of conviction by such plea. Whether it be the maximum term of imprisonment authorized by the statute prescribing a penalty for conviction of a crime or whether it be a combination of terms of imprisonment imposed as penalties for convictions of separate crimes, duration of possible imprisonment is an important factor affecting any defendant's intelligent choice between the alternatives confronting a defendant—going to trial or entering a plea of guilty or nolo contendere. Anyone unaware that the term or duration of incarceration acutely affects a defendant's decision regarding a guilty or nolo contendere plea in

a criminal case is oblivious to one of the realities in our system for efficient criminal justice.

*Irish*, 394 N.W.2d at 884–85 (Shanahan, J., dissenting).

The State argues that the law is satisfied by informing the defendant what the penalty is for each charge. Rule 8(2)(b)(2) does not specify that the defendant must be informed of the possibility of consecutive sentences or what the total number of years imprisonment adds up to, or that the judge is not bound by any plea agreement. The State thus concludes that all of this information may legally remain undisclosed; it is enough if the defendant is informed of the maximum punishment on each charge, leaving the defendant to figure out by implication that the sentences could be ordered to be served consecutively.

Iowa Rule of Criminal Procedure 8(2)(b) requires the judge, before accepting a plea of guilty, to determine that the plea was made voluntarily and intelligently. The United States Constitution requires that to be truly voluntary the plea must be made knowingly and intelligently. *Boykin*, 395 U.S. at 242–43, 89 S.Ct. at 1712, 23 L.Ed.2d at 279. The position urged by the State for our adoption violates these principles and requirements. It leaves the defendant informed of statutory words, thus partially informed, but uninformed of the true maximum possible punishment of twenty years imprisonment coming from consecutive sentences. In essence, defendant is uninformed and unenlightened. The letter of the law and the spirit of the law requiring that the guilty plea be made voluntarily and intelligently, mandated by Rule 8 and the Due Process Clause of the United States Constitution have not been satisfied.

A trial court could satisfy the Rule 8 and constitutional requirements on this issue with a few words explaining the difference between consecutive and concurrent sentences. This colloquy between the judge and the defendant could take less than one minute. It would comply with the requirements of our laws, in spirit and in truth. And, it would not unduly burden our courts.

For the reasons stated, we reverse and remand this case for further proceedings at

which defendant shall be allowed to withdraw his guilty plea and plead anew.

**REVERSED AND REMANDED.**

All justices concur except HARRIS, J., McGIVERIN, C.J., and CARTER and NEUMAN, JJ., who dissent.

HARRIS, Justice (dissenting).

Not me. I cannot agree with the majority's perception of flaws in White's guilty plea proceeding. For openers, the prosecution was faithful to the plea agreement, recommending to the court—just as it promised—that the sentences would be served concurrently. No one pretends the prosecutor even hinted to White or his counsel that the court would be bound by its recommendation. No one pretends White is innocent of either charge, or that there was no factual basis for his pleas. Rather, the reversal is grounded on what strikes me as a wholly unnecessary and unwise expansion of the formal litany required in taking guilty pleas under Iowa rule of criminal procedure 8(2)(b).

I. It is plainly unnecessary. The better reasoned authority clearly holds that the possibility of consecutive sentences is implicit in the court's explanation of the maximum penalties for each charge. *See United States v. Burney*, 75 F.3d 442, 445 (8th Cir.1996); *United States v. Hamilton*, 568 F.2d 1302, 1304–05, 1306 (9th Cir.1978); *Paradiso v. United States*, 482 F.2d 409, 415 (3d Cir. 1973); *State v. Wesley*, 131 Ariz. 246, 640 P.2d 177, 179 (Ariz.1982); *State v. Irish*, 223 Neb. 814, 394 N.W.2d 879, 883 (Neb.1986); *Rosemond v. State*, 104 Nev. 286, 756 P.2d 1180, 1181 (Nev.1988).

I cannot understand how White could anticipate that the court would impose concurrent sentences. The record shows:

> COURT: I should also ask the government to give us the penalties. I think I skipped over that.
>
> STATE: On each charge, Your Honor, the maximum penalty would be an indeterminate prison term not to exceed 10 years and a fine in the amount of $50,000. There's a mandatory minimum fine of $1000 on each count. There's a mandatory 180 days driver's license revocation, and

there's the potential under [section] 124.411 for the defendant to be required to serve one-third of the time imposed before eligible for parole.

> COURT: Mr. White, do you understand those are the potential penalties that you're facing in this case?
>
> WHITE: Yes, Ma'am.

Surely the majority cannot believe White would conclude from the above that consecutive sentences were not an option for the court.

II. No fair minded person wants a guilty plea from anyone who is or claims to be innocent. Criminal rule 8(2)(b) is an attempt to assure the accused is guilty and is cognizant of what is at stake in admitting it. The rule attempts this by requiring the judge to again advise the accused concerning the listed fundamentals, covering the same advice ordinarily expected to come from the defendant's lawyer.

It is not prudent to expand the list, especially for our system in Iowa where persons pleading guilty are, almost without exception, represented by lawyers. *See* 21 Am.Jur.2d *Criminal Law* § 665 (1998) (representation by counsel significant factor in determining whether guilty plea was knowing and voluntary). We have previously applied a common sense approach in declining to require that an accused be apprised of other serious consequences of the plea. *See Kinnersley v. State*, 494 N.W.2d 698, 700 (Iowa 1993) (court not required to advise ineligibility of parole); *Grout v. State*, 320 N.W.2d 619, 621 (Iowa 1982) (same); *Boge v. State*, 309 N.W.2d 428, 431 (Iowa 1981) (same). On an analogous point, we unanimously rejected an ineffective-assistance-of-counsel claim grounded on failure to advise an accused that his guilty plea would result in deportation. *Mott v. State*, 407 N.W.2d 581, 584 (Iowa 1987).

It is a mistake to answer the siren call of those who suggest that our imposition of more litany will clarify the requirements, so that future mistakes with consequent appeals can be avoided. Every requirement invites more litigation and appeals in order to test whether there has been compliance. We

rendered our decision in *State v. Sisco*, 169 N.W.2d 542 (Iowa 1969), with high hopes, and the expectation that a prescribed format would standardize the procedure so clearly that future error could be avoided. Less than eight years later, when we filed our opinion in *State v. Reaves*, 254 N.W.2d 488, 492–93 (Iowa 1977), in addition to all the unnumbered and less formal dispositions, we had filed sixty-three formal opinions reviewing challenges to the sufficiency of guilty plea proceedings. To add an unnecessary one such as this is just plain wrong. I would affirm.

McGIVERIN, C.J., and CARTER and NEUMAN, JJ., join this dissent.