| WOODARD, J.,
dissenting.
It appears that this case presents a res nova issue concerning the legislative intent behind requiring courts to inform a defendant of the “maximum” sentence to which he will be exposed when pleading guilty to more than one charge and the meaning of a “voluntary” and “knowing” guilty plea. It is well settled that the lower court has the responsibility to inform a defendant of the maximum possible sentence he could receive before pleading guilty to any offense(s). However, the statute governing this requirement — La.Code Crim.P. art. 556.1 — does not, explicitly, use terms connoting its application to multiple charges.
Nevertheless, presumably, the underlying goal of its requirement is to ensure that courts are to inform a defendant of the maximum exposure his guilty plea will elicit so that he can give a “knowing” and, thus, “voluntary” guilty plea. Even though, technically, one can argue that the statute requires, only, that a court advise the defendant of the maximum on an individual charge, when he is pleading to more than one, advising him simply of the maximum on each charge without also advising him that those máximums, in effect, could *233 be stacked, greatly expanding Ms incarceration, undermines the legislative intent.
12Notwithstanding, narrowing its focus to La.Code Crim.P. art. 556.1’s word, “charge,” as opposed to “charges,” the majority concludes that the trial court fulfilled its responsibility to make Mr. Girtley fully aware of all the relevant circumstances and likely consequences of Ms guilty plea even though dealing with multiple charges creates a different scenario than that explicitly expressed in the statute and one in which common sense dictates an expanded explanation of the sentencing possibilities to fulfill constitutionally protected due process requirements. Furthermore, with its limited interpretation of La.Code Crim.P. art. 556.1, the majority ignores the pivotal fact that the statute also directs our courts to determine whether a defendant’s plea “is voluntary.”
Essentially, the majority’s approach authorizes lower courts to assume that a defendant will surmise that his sentences could be ordered to run consecutively, even though this resulting omission means providing less than full disclosure. Moreover, reality creates a reasonable expectation for a defendant that he will receive concurrent sentences. This is. because concurrent sentences are the norm for related crimes[1] in light of La.Code Crim.P. art. 883 which provides “if the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.” (Emphasis added.) Thus, this article and its application create for a defendant an expectation, not of facing the imposition of, either, concurrent or consecutive sentences, but rather, of receiving concurrent sentences unless expressly advised to the contrary.
More importantly, to satisfy a defendant’s constitutionally protected due process rights, courts are not permitted to assume that he knows any of the basic consequences of pleading guilty. Rather, they must explicitly advise him of each and every consequence and they must ascertain that he fully understands each consequence. Indeed, in State v. Montalban, our supreme court recently determined that a guilty plea’s validity is dependent on this satisfaction of due process:
|sThe entry of a guilty plea must be a free and voluntary choice on the defendant’s part. Due process requires that pleas of guilty be voluntary and intelligent relinquishments of known rights. The court must make an independent determination of whether the defendant’s plea is made knowingly and intelligently through a colloquy wherein the defendant is questioned about his decision and the constitutional rights he is waiving.[2]
(Emphasis added.)
Additionally, the United States Supreme Court has consistently held that “[wjaivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.” [3] (Emphasis added.)
*234 Nevertheless, in the instant case, the majority concludes that it is enough to inform a defendant of the maximum punishment on each charge, leaving him to surmise that the sentences could be ordered to be served consecutively, thus, increasing his real, possible, maximum exposure of incarceration.[4] Responding to, essentially, the same argument, the Supreme Court of Iowa stated:
The position urged ... for our adoption violates these [Constitutional] principles and requirements. It leaves the defendant informed of statutory words, thus partially informed, but uninformed of the true maximum possible punishment ... coming from consecutive sentences. In essence, defendant is uninformed and unenlightened.[5]
(Emphasis added.)
Furthermore, failing to inform a defendant of the possibility of consecutive sentences violates the spirit of the law.[6] A defendant surely cannot plead intelligently without first understanding the total consequences of his plea. Therefore, “[t]o hold | ¿that the term ‘maximum’ does not include the total possible aggregate sentence is clearly incorrect.”[7]
American Bar Association Standard 14-1.4 explicitly states that the courts should inform the defendant of the possibility of consecutive sentences.[8] Regarding this standard, the Iowa Supreme Court notes that:
[T]he reasoning behind this standard is sound, for this approach will help to assure that the defendant appreciates the significance and consequences of his plea and that once entered the plea will withstand post-sentencing attack. Requiring the trial court to tell the defendant that the sentences may be imposed consecutively and what the total aggregate sentence could be will not significantly lengthen the colloquy or place any undue burden on the court.[9]
Trial courts can easily satisfy La.Code Crim.P. art. 556.1(A)(1) and the U.S. Constitutional due process requirements on this issue with only a few words.[10] Taking this simple step, which is not unduly burdensome [11] and which would take less than one minute[12] is necessary to fully protect a defendant’s rights and provide due process.
In the instant case, the district court did not advise Mr. Girtley that he might have to serve consecutive sentences. Additionally, there is nothing in the record, or from any other source, indicating that his attorney advised him of this possibility. In fact, Mr. Girtley confirms that he believed the greatest sentence he could receive was twenty years and had he known that he could be imprisoned for up to thirty-five years, he would not have plead guilty.
The guilty plea colloquy indicates the trial court advised him of his right to a trial by jury, his right to confront and cross-examine his accusers, and his right *235 against self-incrimination. It also informed him that if he were convicted of another criminal |Boffense in the future, his sentence could be increased because of his decision to enter guilty pleas to the current offenses. Then, the following exchange occurred:
Q You understand that to the charge of attempted manslaughter the court could give you no time in jail up to twenty years and to the charge of one count of possession of a firearm by a felon the court could give you ten years up to fifteen years without benefit, or-pay a fine of $1,000.00 not to exceed $5,000.00 or both, do you understand that?
A Yes sir.
Missing from this exchange, however, are a few extremely important words, explaining the difference between consecutive and concurrent sentences, that he could receive consecutive sentences, and what that would mean for him. The inclusion of this information would have made it possible for the court to make a reasoned assessment of Mr. Girtley’s understanding of the full consequences of his waiver.
The majority’s opinion implies that Mr. Girtley is fortunate to have received any plea agreement whatsoever, therefore, any possible error is harmless because the State could have charged him with crimes that carry a much longer maximum sentence. While this may be true, it is also true that our supreme court’s standard in State v. Guzman[13] instructs that an error is not harmless “if the district court’s flawed compliance ... may reasonably be viewed as having been a material factor affecting [defendant’s] decision to plead guilty.”
Mr. Girtley’s knowledge of the possibility of consecutive sentences surely could have affected his plea negotiations and, ultimately, his decision regarding whether to accept a plea bargain. For example, the prospect of spending thirty-five years in jail, compared with twenty, might have convinced him to exercise his right to a trial to determine his fate which, in turn, might have motivated the State to make a more lenient offer, notwithstanding other possible dropped charges. In other words, sentencing Mr. Girtley, without informing him that he could lose an additional fifteen years of his life, could have affected his decision to plead guilty and his substantial 1 firights-mainly, the extent of his loss of liberty.[14] Thus, the trial court’s omission was not harmless.
We must not forget the magnitude of the rights a defendant loses when he agrees to plead guilty. In Brady v. U.S.,[15] the United States Supreme Court characterized a guilty plea as “a grave and solemn act to be accepted only with care and discernment.” “What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence.”[16]

. State v. Walker, 00-3200 (La.10/16/01), 799 So.2d 461; La.Code Crim.P. art. 883.

. State v. Montalban, 00-2739, p. 4-5 (La.2/26/02), 810 So.2d 1106, 1108-09 (citations omitted).

. Brady v. U.S., 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

. Id.

. Iowa v. White, 587 N.W.2d 240, 246 (Iowa 1998).

. Id.

. Id.; (quoting Commonwealth of Pennsylvania v. Persinger, 532 Pa. 317, 615 A.2d 1305 (1992)).

. See III American Bar Association, Standards for Criminal Justice, std. 14-1.4 (2d ed.1980).

. Iowa, 587 N.W.2d at 245; (quoting Persinger, 532 Pa. 317, 615 A.2d 1305 (1992)).

. Id.

. Id.

. Id.

. 99-1753, 99-1528, p. 20 (La.5/16/00), 769 So.2d 1158, 1165; quoting United States v. Johnson, 1 F.3d 296, 302 (5th Cir.1993) (en banc) (expressly overruling United States v. Martirosian, 967 F.2d 1036 (5th Cir.1992)) (citing United States v. Bachynsky, 934 F.2d at 1360).

. Id.

. 397 U.S. at 748, 90 S.Ct. 1463.

. Boykin v. Alabama, 395 U.S. 238, 243-44, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).