# IN THE COURT OF APPEALS OF IOWA

No. 20-0305
Filed March 17, 2021

**MATTHEW WILSON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Washington County, Crystal S.

Cronk, Judge.

Matthew Wilson appeals the denial of his application for postconviction

relief. **AFFIRMED.**

R.E. Breckenridge of Breckenridge Law P.C., Ottumwa, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney

General, for appellee State.

Considered by Bower, C.J., and Vaitheswaran and Greer, JJ.

**GREER, Judge.**

Matthew Wilson appeals the denial of his application for postconviction relief (PCR), contending he received ineffective assistance from his criminal trial and PCR counsel. He contends trial counsel provided ineffective assistance in failing to adequately explain the plea offer to him and maintains PCR counsel provided ineffective assistance in failing to recognize that trial counsel's actions "amounted to structural error" and to raise and develop the issue in the PCR proceedings. Because Wilson has failed to establish either counsel was ineffective, we affirm.

**I. Background Facts and Proceedings.**

*Criminal Trial.* This court summarized the facts resulting in Wilson's conviction of second-degree sexual abuse as follows:

> M.W.[] reported that when she was eight years old and traveling in Wilson's van, he asked her, "Do you want to stop somewhere and have it." Thereafter, Wilson stopped the van on a side road and told her to get in the back bench of the van. Wilson followed her, unzipped his shorts, exposed his penis, had her put her hand on it, and told her to shake it like a bottle. M.W. observed "white stuff" come from Wilson's penis. When a black truck drove by the van, Wilson told M.W. they should leave. Wilson retrieved a sock from the van, cleaned himself up with it, and threw it out the window. Wilson asked her not to tell anyone. However, when she was questioned on September 15, 2015, by Amanda Seymour, a Department of Human Services worker, M.W. gave a rendition of the above events. Seymour contacted Washington County Deputy Chad Ellis, and an investigation began.

*State v. Wilson*, No. 16-0555, 2017 WL 936125, at *1 (Iowa Ct. App. Mar. 8, 2017). Investigators recovered the sock in the area of the van stop described by M.W. Testing showed that sperm was present on the sock, and a DNA profile developed from the sperm matched Wilson's.

The State filed a trial information charging Wilson with second-degree sexual abuse (count I), incest (count II), lascivious acts with a child (count III), and indecent exposure (count IV).

The State offered Wilson a plea bargain, available to him before M.W.'s deposition was to be taken—December 11, 2015. The State proposed that in exchange for Wilson's guilty pleas to incest and lascivious acts with a child, the remaining counts would be dismissed and the State would recommend consecutive sentences for a total term of fifteen years but there would be no mandatory minimum. Before M.W.'s deposition was taken, the offer and Wilson's rejection of the offer were placed on the record. Wilson made a counter-plea offer.

But instead of responding to the counter-plea offer, on December 30, the State moved to dismiss counts II, III, and IV with prejudice, which was granted over Wilson's resistance. Now with only a charge of second-degree sexual abuse to consider by the jury, the trial was held. The jury convicted Wilson of second-degree sexual abuse. He was sentenced to a period of confinement not to exceed twenty-five years and is required to serve seventy percent of the sentence before being eligible for parole.

*Appeal.* On appeal, Wilson argued that the district court erred in denying his motion to suppress his statements to a law enforcement officer in which he acknowledged he had exposed his penis to M.W. and ejaculated. *Id.* We rejected Wilson's claim that the interview contained implied promises of leniency and found the court did not err in denying his motion to suppress. *Id.* at *2–3.

*PCR proceedings.* In May 2018, Wilson filed a timely PCR application, which was amended by counsel in October. The application alleged Wilson was

denied effective assistance of trial and appellate counsel in several respects, including that trial counsel did not properly investigate Wilson's attention deficit hyperactivity disorder (ADHD) as a defense and failed to adequately explain the plea offer.

Following a January 23, 2020 PCR hearing, the district court found trial counsel testified credibly that he explained the plea offer to Wilson "multiple times." The court also found:

> Wilson did not make sufficient showing that he provided information to [trial counsel] that required more investigation into the ADHD diagnosis as a defense in the case. [Counsel] was credible in his testimony that at no time during his interactions with Wilson did he note any mental health or competency issues. Wilson did not provide [trial counsel] with any further information about his diagnosis as a child with ADHD or with any alleged history of blacking out.

After the district court addressed each of Wilson's several claims with respect to trial and appellate counsels' asserted deficient performances, it found Wilson's proof wanting and dismissed the application. Wilson appeals.

## II. Scope and Standard of Review.

Appellate review of PCR proceedings is typically for correction of errors at law, but when claims of ineffective assistance of counsel are asserted, our review is de novo. *See Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018). On our de novo review, we give weight to the trial court's fact findings, especially with regard to credibility. *See Paxton v. Paxton*, 231 N.W.2d 581, 584 (Iowa 1975) ("Understandably[, the] trial court was in a better position than are we to observe the conduct of all witnesses, including the parties hereto, and determine the credibility of their testimony.").

**III. Analysis of Ineffective Assistance of Counsel Claim.**

In this appeal, Wilson limits his issues to trial counsel's failure to explain his plea offer and PCR counsel's failure to recognize and raise a claim of structural error regarding trial counsel's representation following Wilson's rejection of the plea offer. To prevail on his claims of ineffective assistance, Wilson must show (1) trial counsel failed to perform an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Ledezma v. State*, 626 N.W.2d 134, 141–42, 145 (Iowa 2001). On the duty prong, Wilson must show counsel made errors so serious he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. "[W]e begin with the presumption that the attorney performed competently" and "we avoid second-guessing and hindsight." *Ledezma*, 626 N.W.2d at 142. "[C]laims of ineffective assistance involving tactical or strategic decisions of counsel must be examined in light of all the circumstances to ascertain whether the actions were a product of tactics or inattention to the responsibilities of an attorney guaranteed a defendant under the Sixth Amendment." *Id.* at 143.

To establish the prejudice prong, Wilson must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Here, Wilson contends trial counsel did not adequately explain the plea offer, essentially asserting that his attorney should have required him to accept the offer because the State later would be allowed to amend the trial information, leaving Wilson with the untenable defense that he admitted an offense had

occurred, just not second-degree sexual abuse.[1]  This hindsight is not persuasive and involves the type of second-guessing a reviewing this court is to avoid.  *See Ledezma*, 626 N.W.2d at 142.

Wilson mentions his trial counsel's failure to explore issues related to Wilson's mental health by seeking a mental-health evaluation.  Referencing his "extensive mental health" history and his ability to appreciate the plea offer, Wilson suggests "it is almost impossible to judge what information Wilson was given and how accurate was his perception of the offer."  Yet Wilson offered no mental-health evaluation at the PCR hearing to bolster a claim of mental incapacity.  At most, Wilson testified he was diagnosed with ADHD when he was under ten years of age[2] and received treatment and medication for the diagnosis until he was almost eighteen years old and was no longer eligible for California services.  On examination, Wilson confirmed he did not know if any memory issues or blackouts were directly caused by his ADHD.  His described having "anger issues" but noted he was more volatile while on the ADHD medications as a child.  Wilson did not connect any of these conditions with any failure to understand his plea by any competent evidence.  *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (noting

---

[1] In his brief, Wilson summarizes his claim:
> A criminal defendant with a history of mental heal[th] issues is going to trial against overwhelming facts.  The charges then change and the defendant has only two possible outcomes, a mandatory 17.5 years in prison or a jury after hearing what acts he has admitted to will strictly apply the law and find him not guilty.  The attorney who lets a client choose trial under those circumstance is not performing in the normal range of competency.

[2] The PCR court observed Wilson was twenty-nine years old at the time of the offense.

showing nothing more than simply claiming what an investigation might reveal is not enough to address the competency of counsel).

To address the plea discussions, trial counsel testified he communicated with Wilson at least four times about the plea offer; he specifically told Wilson that if he accepted the plea, there was no mandatory minimum term of imprisonment Wilson would have to serve. After reviewing the evidence the district court observed, "[Counsel] testified credibly that he explained the plea offer to the defendant multiple times." *See State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017) (confirming the district court has the advantage of assessing credibility of witnesses when crafting its findings of fact). What is more, at the deposition of M.W., the entire plea agreement was set out on the record in Wilson's presence. Wilson had this exchange at the PCR trial with the State:

> Q. I am looking at the transcript, which we have marked as State's Exhibit 1, which is a confirmation of the plea offer. It was a done on Friday, December 11, 2015. Your attorney . . . was there. I was there. The county attorney . . . was there. Do you remember that? A. Yes.
> Q. And then for the record, it was spelled out by myself that the plea offer was for a C and a D felony and a ten-and a five-year, and I said in there, it indicated on page 2, lines 24 and 25, the agreement was the defendant would have to agree to Counts 2 and 4. They would run—now on page 3—consecutively, meaning one after another for a ten plus a five-year term, which would be 15 years. That's why they call it an indeterminate term, which means there is no mandatory minimum, meaning you would have to go to prison, but there is no minimum, the Board of Parole decides you would— when you would be eligible for parole whenever they decide it is appropriate. There is no minimum term. It is the State's understanding that the plea offer would be rescinded today when you start taking depositions of the victim, and then [trial counsel] went out, and he also explained about the lifetime parole; correct? A. I believe so.
> Q. So it was pretty clear at that time that it wasn't going to be 15 years in prison, it was going to be 15 years for an indeterminate term, that the Board of Parole decides when you get out, wasn't it?

A. Well, I didn't—I don't remember it being explained in that room. I remember him talking about, like, re-explaining the lifetime and stuff, but I don't remember the actual charges.

Q. In fact— A. —explained like that.

Q. In fact, Mr. Wilson, in fact, [trial counsel] talked to you on four separate occasions about the plea offer, and he explained that there would be no minimum, and it would be a 15-year sentence with no minimum; correct? A. I don't remember four times.

And trial counsel testified Wilson's primary concern was the consequences of the lifetime special sentence if he pled guilty to lascivious acts with a child. Counsel also advised Wilson that the guilty plea would mean he could not raise the issue of whether his confession should be suppressed.

Wilson's attorney left the ultimate decision about plea offers to Wilson after discussing the pros and cons of the offer, as counsel is required to do. *See New York v. Hill*, 528 U.S. 110, 114–15 (2000) (including the right to plead not guilty as a "fundamental right" that requires the defendant to "personally make an informed waiver" for the waiver to be valid); *see also State v. White*, 587 N.W.2d 240, 246 (Iowa 1997) ("It is virtually self-evident that defendant's decision to plead guilty or nolo contendre to a criminal charge is a grave and personal judgment . . . ."). As such, Wilson rejected the offer made here. Given Wilson's rejection of the plea offer, and the district court's dismissal of the other charges, trial counsel had little choice but to make the reasonable argument that the jury could believe M.W. and still conclude that Wilson was not guilty of second-degree sexual abuse.[3] After

---

[3] Wilson explains the central issue at trial was whether or not M.W. touched Wilson's genitalia. "The record indicated that in at least one previous interview, the victim had denied multiple times that she had actually touched the penis. At trial [trial counsel] could then argue that no touching had occurred and that at most this was an indecent exposure misdemeanor."

considering the arguments made by Wilson, we find he failed to prove an ineffective-assistance-of-counsel claim against his trial counsel.

Next, Wilson complains the PCR counsel did not "determine what if anything trial defense counsel did to combat the State forcing the defense into this proposition." The record establishes trial counsel resisted the motion to dismiss the lesser charges, arguing he did not want an "all-or-nothing" trial on the second-degree-sexual-abuse charge. Wilson does not state what more he believes his trial counsel could or should have done. In the end, trial counsel had no control over the strategy employed by the State.

Finally, Wilson asserts his PCR counsel failed to argue trial counsel's breach of duty was so egregious that structural error was present and, thus, no showing of *Strickland* prejudice was required. *See Lado v. State*, 804 N.W.2d 248, 252 (Iowa 2011) (holding structural error occurred by counsel's failure to avoid dismissal of the PCR application for want of prosecution). This is not the circumstance where counsel has been completely denied or the circumstances justify a presumption of prejudice. *See Krogmann v. State,* 914 N.W.2d 293, 312 (Iowa 2018). We find no structural error on this record.

On our de novo review, Wilson failed to establish his trial counsel breached a duty in explaining the plea offer. And because trial counsel's performance was not deficient, Wilson has failed to establish PCR counsel breached an essential duty in presenting the ineffective-assistance-of-counsel claim. We therefore affirm.

**AFFIRMED.**