THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROCKE FLANNIGAN, Defendant-Appellant.

(No. 70-58;

Fifth District—March 3, 1971.

Elmer Jenkins and Jeff Troutt, both of Benton, for appellant.

Frank Bonan, State's Attorney, of McCleansboro, for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant, Rocke Flannigan, was found guilty in a jury trial in the Circuit Court of Hamilton County of resisting a peace officer in violation of Ill. Rev. Stat. 1969, ch. 38, par. 31—1. He then entered a plea of guilty to a charge of reckless driving-second offense in violation of Ill. Rev. Stat. 1969, ch. 95—½, par. 145, and was sentenced to terms of one year and six months, respectively, to be served consecutively at the State Farm at Vandalia. Defendant appeals from both judgments of conviction.

At approximately 3:30 or 4:00 P.M. on the afternoon of April 25, 1969, defendant was seen by various people driving his car in and around McLeansboro, Illinois, in what may be described for purposes of this opinion as a reckless manner. Defendant had been having an argument with his girl friend, Sharon Thomas, who was being walked home by a mutual friend, Donald Donaldson. At the place where the incident occurred defendant had pulled his car off to the side of the road near where his friend and girl friend were walking as he had done several times immediately preceding this in an attempt to talk with her.

Sergeant Carl Pendell, a state patrolman, testified that he was on duty at that time, that it was reported to him, and he saw, that defendant was driving his car in a reckless manner. He stopped his patrol car behind defendant's car and walked up to the car where defendant was sitting behind the steering wheel. He told defendant that he was under arrest and to come with him. Defendant asked what the charge was. Pendell told him reckless driving. Defendant asked who was going to prefer the charges and Pendell answered that he was. Defendant used profane language and told Pendell that the police were always picking on him. Pendell reached in the car to get the keys but defendant grabbed them from the ignition and put them in his pocket. Then he took the keys out and put them back in the ignition, but he did not start the car. Pendell again reached into the car and grabbed the keys. Defendant asked him to return the keys so he could give them to his girl friend. However, Pendell refused. Instead, he asked defendant two or three times to get out of the car and when defendant did not do so immediately, Pendell reached in and took defendant from the car. When he was outside, defendant said, "Take your hands off me. I'll go." Pendell released him but defendant would not go, so he put his hands on defendant again and took him back to the patrol car. When Pendell first released defendant, defendant jerked his arm away but made no attempt to run, nor did defendant hit or push Pendell after he was released.

"Q: Did he say, let me alone, I will go with you? Did he say take your hands off me, I will go with you?

A: Yes, sir.

Q: And what did he do?

A: He wanted to argue.

Q: Did you make any effort to go toward your squad car and have him follow or say, get going, and I will follow you?

A: No.

Q: What made you put your hand on him, after you jerked him out of the car and let him alone, what made you grab him and force him in the squad car?

A: When your arrest someone, you ask them to go with you peaceful like, and we would like for them to do that. When they don't do it, we are supposed to take them back to the squad car by other means, and I put my hand on his arm and took him back to the car, which is what I am supposed to do.

Q: Did he make any effort to flee or run when you were taking him back to the car?

A: He was trying to get my hand off of him.

Q: He wasn't trying to escape you, was he?

A: I don't know.

Q: He didn't, did he?

A: He didn't because I didn't let him."

Defendant's father, Wallace Flannigan, arrived at the patrol car just as defendant and Pendell did. Pendell walked around to the driver's side of the patrol car, got in and unlocked the door to the passenger side and defendant got into the patrol car by himself and made no effort to run. Then Pendell, defendant and defendant's father drove to the police station where, Pendell testified, defendant was verbally abusive and had to be placed in jail.

Defendant testified that he had wanted to keep the keys so that he could give them to his girl friend so she could drive his car home. When Pendell told him to get out of the car he said, "All right." By that time she had already turned around and started walking toward the car. She was ten or fifteen feet away at that time. Defendant testified, "I was putting the keys back in the ignition and he reached in and pulled them out and he said, 'Get out,' and I said, 'Wait just a second,' and he opened the door and I turned to look at Sharon and he grabbed me and pulled me out." Pendell started to push defendant toward the patrol car and defendant told him, "Take your hands off me. Let me walk. I will go. Don't push and shove me around." Defendant testified that he was not trying to run away but was trying to wait for Sharon to walk to the car so that he could give her the keys. When he and Pendell got to the patrol car his father arrived at the same time and they were standing by the passenger's side of the patrol car while Pendell went around to the other side in order to unlock the door.

Donald Donaldson testified that he was standing next to the car during this incident. He saw Pendell reach in the car and defendant pulled the keys from the ignition. He heard defendant say, "No, you can't have that. I want to give my keys to Sharon." He heard Pendell tell defendant he was under arrest and to come with him and also heard the defendant say, "I want to give my keys to Sharon." After Pendell told defendant he was under arrest, the second or third time, "He just opened the door, reached

in and grabbed hold of Rocke and pulled him out of the car." He could not say whether there was a pause but he appeared to immediately grab defendant from the car and the whole incident lasted perhaps one minute. He did not see anything after that.

Wallace Flannigan testified that as he approached the cars he saw Pendell pull defendant from the car and they were "kind of wrestling around." He heard defendant say that if Pendell would take his hands off, he would go. The witness walked up and said, "Let me take him. He'll go." Then Pendell walked around to the driver's side of the patrol car and defendant entered the car by himself. The only resistance the witness saw was when defendant was saying, "Take your hands off. I'll go."

A person is guilty of resisting a peace officer "who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity * * * *" (Ill. Rev. Stat. 1969, ch. 38, par. 31—1.) This section recently withstood a constitutional challenge in *Landry v. Daley*, 280 F.Supp. 938, wherein the court stated at page 959:

> "The gist of the offense is 'resisting' or 'obstructing' the valid acts of a peace officer. These terms convey commonly recognized meanings. "Resisting' or 'resistance' means 'withstanding the force or effect of' or the 'exertion of oneself to counteract or defeat'. 'Obstruct' means 'to be or come in the way of.' These terms are alike in that they imply some physical act or exertion. Given a reasonable and natural construction, these terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent, or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest."

Subsequently, our Supreme Court approved this language in *People v. Raby*, 40 Ill.2d 392, and noted that the *Landry* case emphasized "that the statute requires knowing resistance or obstruction 'which considerably narrows the scope of the enactment by exempting innocent or inadvertent conduct from its proscription.'" Although both of these cases involve arrests during demonstrations the same "reasonable and natural construction" of the statute must be applied.

The record in this case is replete with testimony, not set forth in detail here, of the manner of defendant's driving on the day in question, of prior encounters with the law arising out of traffic incidents, and of his general disrespect for law officers and authority in general. Certainly defendant's conduct and attitudes are not admirable, but the information in this case charges him with "resisting a police officer" not "disrespect for the law."

The state concedes that the charges for resisting a police officer is not based on his abusive conduct in the police station: hence, review of this conviction must be confined to evidence of defendant's conduct from the time Sergeant Pendell placed defendant under arrest until defendant was seated in the patrol car.

■■■ Essentially, the evidence shows that defendant did not immediately step from his car, that he wanted to give his car keys to his girl friend, that he intended to argue with Sergeant Pendell over the charge and that he jerked his arm away from Pendell when Pendell tried to take him to the car. At no time did he say that he refused to go nor did he attempt to escape. At times his language was abusive. Such conduct, while not the paragon of cooperation, was not "withstanding the force or effect of" or the "exertion of oneself to counteract or defeat" Pendell in the exercise of his authorized duty; so that, giving the statute a reasonable and natural construction as has been done by our Supreme Court, we do not believe that defendant's conduct, which is at most an insubstantial display of antagonism or belligerence, constitutes the offense of resisting a police officer and defendant's conviction for that offense must be reversed.

We turn now to defendant's contention that the trial court failed to fully advise him of the consequences of his plea before accepting his plea of guilty to reckless driving in that the court did not advise him that the sentence for reckless driving could be imposed consecutively to the sentence for resisting a police officer.

The record shows that after defendant was found guilty of resisting a police officer and the jury was dismissed, but before he was sentenced on that charge, defendant elected to change his plea to the charge of reckless driving to guilty. In its admonishment to the defendant of the effect of his plea, the trial court stated, "Before accepting your plea of guilty, it is my duty to advise you that on your plea of guilty to this traffic ticket and complaint, which charges you with the offense of reckless driving, second offense within one year, that you can be punished by imprisonment not more than six months or be fined not to exceed $1,000.00 or both. That is the maximum penalty that can be imposed upon you upon your plea of guilty to this offense. In other words, the maximum penalty is imprisonment not to exceed six month and a fine not to exceed $1,000.00. You understand what the maximum penalty can be?" Answer: "Yes."

Thereafter, at the hearing on aggravation and mitigation, the trial court sentenced defendant to terms of one year and six months to be served consecutively at Vandalia.

Section 115–2(2) of the Illinois Criminal Code (Ill. Rev. Stat., 1969, ch. 38, par. 115–2(2) provides that a plea of guilty may be accepted when "the court has informed the defendant of the consequences of his

plea and of the maximum penalty provided by law which may be imposed upon acceptance of the plea." No Illinois case has been cited and we have found none which directly holds that a defendant must be advised that sentences may be imposed consecutively before his plea of guilty may be accepted to any charge. However, in *People v. Nelson,* 26 Ill.2d 337, our Supreme Court had implicitly recognized that an admonition of the possibility of; consecutive sentences would be required before a plea of guilty could be accepted where the trial court was aware of that possibility.

In that case the defendant pleaded guilty on May 26, 1955, to the crime of assault with intent to commit murder. On June 16, 1955 he was placed on probation for a five-year period. On June 12, 1958, while still on probation, defendant was indicted for the murder of his estranged wife. Pursuant to his plea of guilty to involuntary manslaughter, defendant was sentenced to the Illinois State Penitentiary for a term of six to ten years. Pending the disposition of that charge, an order was entered for defendant to show cause why his probation in connection with the prior crime should not be revoked. At a hearing on September 17, 1958, the court revoked defendant's probation and sentenced him upon his original conviction to a term of five to fourteen years to commence after the expiration of his sentence for manslaughter. Defendant appealed from that sentence asserting as one ground for reversal that he was not properly apprised of the full extent of his original plea of guilty since the court did not inform him that a consecutive sentence could be imposed.

> Responding to this contention, our Supreme Court stated at page 340: "The trial court could not have anticipated at that time (May 26, 1955) that defendant would commit the crime of involuntary manslaughter, or any other crime in the future, to warrant the inclusion of a reference to a possible consecutive sentence. There is no requirement that the court must, before accepting a plea of guilty, contemplate and apprise defendant of all future contingencies which could conceivably affect his sentence."

By implication we believe that had the trial court known of the possibility of consecutive sentences, that a warning to that effect would have been required to permit the defendant to knowingly and intelligently enter a plea of guilty. That court has recognized that the reasons for full disclosure to the defendant of the consequences of his plea is that the decision to plead guilty to a criminal accusation is a grave and personal judgment and an accused should not be allowed to enter such a plea unless he has a full comprehension of the possible consequences of so pleading. (*People v. Ballheimer,* 37 Ill.2d 24.) It is no answer that defendant should have known of such a possibility. *People v. Terry,* 44 Ill.2d 38.

Where a defendant is charged with more than one crime, the manner in

which he may have to serve the sentences imposed for those crimes, whether consecutively or concurrently, is obviously a consequence of his plea, and must be considered as crucial to his decision as the admonition on the maximum penalty for each of the charges. In recognizing the necessity of this admonition, Supreme Court Rule 402(a)(2) (effective September 1, 1970) provides that the court shall not accept a plea of guilty without first informing the defendant of "the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences," and the American Bar Association has recommended that the court should not accept a plea of guilty without informing the defendant of the maximum possible sentence on the charge including that possible from consecutive sentences. (Standards Relating to Pleas of Guilty, Approved Draft, 1968, Sec. 1.4(c)(i).)

In this case, we recognize the possibility that defendant was unintentionally misled by the admonition of the trial court that "the maximum penalty is imprisonment not to exceed six months and the fine not to exceed $1,000.00" without an additional admonition that the maximum penalty could or would be imposed consecutively to the sentence for the conviction of resisting a peace officer. Both of these charges were before the same court at the same time and sentence was to be rendered on the same day so that it is obvious that the trial court knew of the possibility of consecutive sentences.

■■ The fact that the trial court's admonition would now be adequate in light of our reversal of defendant's conviction for resisting a peace officer does not render harmless the trial court's failure to give a proper admonishment at the time the plea was entered. The validity of defendant's guilty plea must be reviewed in the posture in which that plea was entered and defendant is entitled to enter his plea with full knowledge of the possible consequences of that plea as they exist at that time. We cannot presume what the defendant's plea would have been had he been advised of the possibility of a consecutive sentence at the time he pleaded guilty.

Accordingly, defendant's conviction for resisting a police officer in violation of Illinois Revised Statutes, 1969, Chapter 38, Section 31–1 is reversed. The conviction for reckless driving-second offense in violation of Illinois Revised Statutes, 1969, Chapter 95–½, Section 145, is vacated and that case is remanded to the Circuit Court of Hamilton County with directions to permit defendant to plead anew.

GOLDENHERSH and EBERSPACHER, JJ., concur.