THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RAYMOND SCOTT BROWN, Defendant-Appellant.

Fourth District   No. 15867

Opinion filed May 5, 1980.

Burger, Fombelle, Wheeler & Dvorak, P. C., of Decatur, for appellant.

Art Powers, Jr., State's Attorney, of Sullivan (Donald E. Wood, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After trial by jury in the circuit court of Moultrie County, defendant, Raymond Scott Brown, was convicted on August 10, 1979, of committing

on June 7, 1979, the offenses of resisting a peace officer and disobeying a stop sign in violation of section 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 31—1), and section 11—904 of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½, par. 11—904), respectively. Defendant was sentenced to 1 year's probation, fined $250, and sentenced to 10 days in jail. On appeal he asserts (1) the evidence was insufficient to prove beyond a reasonable doubt his guilt of resisting a peace officer, and (2) the court committed reversible error in admitting testimony as to his abusive behavior in the police station after his arrest.

At approximately 1 a.m. on June 7, 1979, defendant drove up to the Sullivan police station and talked to Officer Robert Minnis about purchasing some gasoline. The Sullivan police department apparently had a practice of selling for cash small quantities of gasoline to people who had run short during times when service stations would have been closed. Minnis told defendant of the cash requirement and because defendant was out of cash, he drove to a nearby tavern, borrowed some money and returned to the station. In the process of his return, he ran a stop sign. Moultrie County deputy sheriff Harold Morgan was, at that time, on duty standing in front of the police station and saw defendant run the stop sign. Upon defendant's return to the station, he was approached by Morgan, who asked to see his driver's license but did not then tell defendant why he wished to do so. Defendant refused and further words were spoken, the exact nature of which was in dispute, but one statement by defendant seemed to ask Morgan if he was also going to pull his gun on him or shoot him. Morgan testified that defendant then said Morgan was going to have to pull his gun in order to see the license.

The testimony concerning the subsequent conduct of Morgan and defendant was partially disputed. Morgan testified that after the conversation concerning the gun, defendant put the car in reverse gear and started to back away, whereupon Morgan told defendant that he, defendant, was under arrest and that defendant then stopped the car and made a lurid comment that Morgan did not need to see his license. Defendant testified that after the conversation concerning the gun, he was going to alight from the car but Morgan shut the car door so he backed up for about two feet and upon being told he was under arrest, stopped the car, refused a further request of Morgan to see his license, started to roll up the window, and put the car in parking gear.

Morgan testified that upon defendant's stopping, he then opened defendant's door and again told defendant he was under arrest. Morgan said that with the motor still running, defendant then turned in the driver's seat, grabbed the steering wheel and reached for the gearshift whereupon

he grabbed defendant by the hair, pulled him out of the car and handcuffed him. Morgan explained that he grabbed defendant by the hair because he anticipated that he was going to move the car again. Defendant testified that he had put his hand on the gearshift when Morgan opened the door and pulled him out but spoke of the shift having been placed in the "park" position before he returned his hand to the gearshift. The testimony of Minnis and James Allen, a bystander who was a friend of Morgan, generally substantiated Morgan's testimony. Allen described defendant's conduct as indicating an intention to drive away.

Section 31—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 31—1) provides:

> "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity commits a Class A misdemeanor."

The information charging defendant with resisting alleges that defendant, knowing Harold Morgan to be a police officer engaged in official duties, refused to leave his vehicle and attempted to drive away after Morgan told him that he was under arrest.

In *People v. Raby* (1968), 40 Ill. 2d 392, 240 N.E.2d 595, *cert. denied* (1969), 393 U.S. 1083, 21 L. Ed. 2d 776, 89 S. Ct. 867, the Illinois Supreme Court adopted the standard for obstructing or resisting a peace officer as set out in *Landry v. Daley* (N.D. Ill. 1968), 280 F. Supp. 938, *appeal dismissed* (1968), 393 U.S. 220, 21 L. Ed. 2d 392, 89 S. Ct. 455, *rev'd on other grounds sub nom. Boyle v. Landry* (1971), 401 U.S. 77, 27 L. Ed. 2d 696, 91 S. Ct. 758. The *Landry* court, in upholding the constitutionality of section 31—1, construed it as follows:

> "The gist of the offense is 'resisting' or 'obstructing' the valid acts of a peace officer. These terms convey commonly recognized meanings. 'Resisting' or 'resistance' means 'withstanding the force or effect of' or the 'exertion of oneself to counteract or defeat'. 'Obstruct' means 'to be or come in the way of.' These terms are alike in that they imply some physical act or exertion. Given a reasonable and natural construction, these terms do not proscribe mere argument with a policeman about the validity of an arrest or other police action, but proscribe only some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent, or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." (280 F. Supp. 938, 959.)

Both *Landry* and *Raby* involved arrests during demonstrations. The defendant in *Raby* was held to have resisted arrest by "going limp," a physical act. 40 Ill. 2d 392, 403, 240 N.E.2d 595.

It also has been held that flight is a physical act within the purview of section 31—1 (*People v. Holdman* (1978), 73 Ill. 2d 213, 383 N.E.2d 155), as is struggling with or pulling away from a police officer. *People v. Wilson* (1973), 14 Ill. App. 3d 1074, 303 N.E.2d 225 (abstract); *People v. Fort* (1968), 91 Ill. App. 2d 212, 234 N.E.2d 384; see *City of Joliet v. Schmidt* (1976), 35 Ill. App. 3d 978, 343 N.E.2d 40 (violation of Joliet city code, same wording as section 31—1).

While struggling and fleeing can easily be seen as physical acts that constitute resistance, some fact situations are more problematic.

For example, in *People v. Weathington* (1979), 76 Ill. App. 3d 173, 394 N.E.2d 1059, this court concluded that defendant's refusal to answer booking questions did not constitute resisting. Mere silence was not a physical act by the *Raby* standard. In *People v. Flannigan* (1971), 131 Ill. App. 2d 1059, 267 N.E.2d 739, relied upon by defendant and distinguished by the State, defendant was stopped and arrested for reckless driving. The evidence showed that defendant did not step immediately from the car. Rather he argued with the officer, using abusive language. He also refused to give the car keys to the officer, and he jerked his arm away from the officer when the officer tried to take him to the patrol car. The appellate court noted, however, that defendant neither attempted to escape nor refused to go with the officer. It concluded that defendant was not "withstanding the force or effect of" the officer in the exercise of his authorized duty and reversed the conviction. 131 Ill. App. 2d 1059, 1063, 267 N.E.2d 739, 742.

In the case before us, defendant had refused to cooperate with Deputy Morgan. The jury could have determined that while arguing with Morgan, defendant had twice been told that he was under arrest, but had nevertheless moved the car once, and placing his hands on the car's steering wheel and gearshift defendant was attempting to move it again. Defendant's conduct under these circumstances would constitute more than arguing with Morgan, and the jury could have concluded that his act was an attempt to flee which hindered Morgan's taking him into custody and required Morgan to grab him by the hair and pull him from the car. Under these circumstances, the conduct would thus be that which withstood "the effect of" the officer's lawful arrest. Although argument, abusive language, or lack of cooperation on defendant's part would not have constituted sufficient acts, in themselves, to form the basis of the offense, the existence of this conduct would support a conclusion that defendant was attempting to flee. From all of the evidence, the jury could have believed beyond a reasonable doubt that defendant was guilty of resisting Morgan's arrest of him.

Over vigorous defense objection, Morgan and other State witnesses

were permitted to testify to belligerent behavior and use of abusive language by defendant after he was brought into the police station. He argues that this testimony had no relevance to any material issue in the case and was so substantially prejudicial as to entitle him to a new trial. He draws analogy to *People v. Bernette* (1964), 30 Ill. 2d 359, 197 N.E.2d 436, where the supreme court deemed the introduction by the State of evidence that the victim left a spouse and family presented in such a way as to cause the jury to believe that it was material constituted reversible error.

However, in *People v. Wright* (1974), 20 Ill. App. 3d 1039, 313 N.E.2d 666, evidence somewhat similar to that here was held to be admissible in a case involving a defendant charged with aggravated battery and resisting arrest arising from his conduct at the scene of an automobile collision. The State was permitted to introduce evidence that when subsequently brought to the police station, the defendant was screaming and had to be taken to the prison area. The court deemed the evidence to be probative of the defendant's state of mind at the time of the commission of the alleged offense. The testimony here was in more detail than in *Wright* but the principle of relevancy would be the same. Thus, it was not improper to present the evidence in a manner indicating that it was material.

As the probative value of the evidence was not great because of its remoteness from the time of the occurrence and its being only of a circumstantial nature and because it did have a tendency to prejudice the defendant, hindsight would indicate that it might have been better to limit the detail of this evidence to be presented, but we find no reversible error.

The judgments of the trial court are affirmed.

Affirmed.

MILLS, P. J., and TRAPP, J., concur.