NOTICE
Decision filed 02/21/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220299-U

NO. 5-22-0299

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CM-443 |
| | ) | |
| ESLEY CARTER, | ) | Honorable |
| | ) | Matthew D. Lee, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Presiding Justice Vaughan and Justice Moore concurred in the judgment.

ORDER

*Held*: The conviction of the trial court is affirmed where the evidence was sufficient for a rational trier of fact to find each element of the offense beyond a reasonable doubt and where the court substantially complied with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before allowing the defendant to waive his fundamental right to counsel.

¶ 1 This is a direct appeal from the circuit court of Champaign County. The defendant, Esley Carter, was convicted of resisting a peace officer. On April 29, 2022, the trial court sentenced him to 2 days in jail and 12 months of conditional discharge. The defendant appeals, contending both that the evidence was insufficient to convict him and that the court failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before allowing him to waive his fundamental right to counsel. For the reasons that follow, we affirm.

1

¶ 2                           I. BACKGROUND

¶ 3      On September 27, 2021, the State charged the defendant with, *inter alia*, resisting a peace officer in that the defendant knowingly resisted arrest by pulling away from Officer Ashley Butt, whom the defendant knew to be a peace officer engaged in the execution of her official duties. See 720 ILCS 5/31-1(a) (West 2020).

¶ 4      The charge arose from an incident that took place on September 27, 2021. On that date, the Rantoul Police Department was called to a residence to remove a person for a reported trespass to property. The reporting individual advised that her boyfriend, the defendant, was at her residence banging on doors and windows, arguing with her, and refusing to leave. Once officers arrived at the scene, they identified the defendant sitting in a parked car outside in front of the residence. Officers spoke with the defendant, determined a crime had occurred, and attempted to place him under arrest, but he remained uncooperative. Eventually, other officers arrived on the scene, and the defendant was assisted out of his vehicle and placed under arrest. The officers' interaction with the defendant was recorded on body camera footage.

¶ 5                               A. Trial

¶ 6      At trial, the State's first witness was Officer Edgar Garcia, who testified that on September 27, 2021, at approximately 10:04 p.m., he and Officer Ashley Butt responded to a remove subject dispatch at 608 Broadmeadow. Officer Garcia spoke with the woman who lived at the property, and she told him that her boyfriend, the defendant, was banging on her doors and windows and refusing to leave the property. While this conversation was ongoing, Officer Butt was speaking with the defendant, who was seated inside his vehicle parked in front of the property. Officer Garcia noticed that their conversation had become escalated, so he approached the vehicle to assist Officer Butt. The defendant refused to exit the vehicle or even to provide his name to Officer Butt.

2

As the officers had probable cause for several crimes, they attempted to place the defendant under arrest. The defendant did not cooperate with these efforts and did not exit the vehicle voluntarily. Officer Garcia testified that the defendant "pulled away from officers after continuous attempts to assist him out of the vehicle" and "braced his feet inside the vehicle to prevent himself from being removed." Eventually, "several other officers arrived on scene and assisted the defendant out of the vehicle and were able to place him in handcuffs."

¶ 7    The State's next witness was Officer Ashley Butt. Officer Butt testified that, prior to arriving at 608 Broadmeadow, Metropolitan Computer Aided Dispatch (METCAD) had advised the officers that the defendant had left prior to police arrival and was driving a smaller silver vehicle. When the officers arrived on scene, Officer Butt noticed a silver Nissan Versa parked in front of the residence. Officer Butt began to speak with the defendant, who was sitting inside the vehicle. When Officer Butt asked him what was going on and for his name, he became uncooperative. The officers concluded that a crime had been committed and attempted to put the defendant under arrest. They informed the defendant of the charges and asked him to exit the vehicle multiple times, but he refused to cooperate. Officer Butt then reached inside the vehicle window, unlocked the car, and placed a handcuff on the defendant's left wrist. Officer Butt testified that the defendant continued to ask the officers what crimes had been committed, even after he had been advised of the charges multiple times. After multiple advisements, in response to another questioning by the defendant of what he had done, Officer Butt responded, "You know what you've done." This entire interaction was recorded on Butt's body cam, which was admitted as an exhibit and shown to the jurors.

¶ 8    In the video, Officer Butt exited her vehicle and approached the defendant's vehicle, which was parked in front of the residence. She asked for the defendant's name and whether he was just

3

previously at 608 Broadmeadow trying to get ahold of his girlfriend. The defendant asked who Officer Butt was and why she was talking to him. Officer Butt gave the defendant her name and told him that she was there because they received a call that a male in a silver car was banging on someone's door. The defendant claimed not to know anything about the situation. Officer Butt asked his name once again, but the defendant refused to provide it. Officer Butt asked what was going on. The defendant animatedly told her that he did not know. Officer Butt asked why he was parked in front of the residence, and the defendant responded by asking if it was illegal for him to park there.

¶ 9     Officer Butt again asked what was going on. The defendant answered that nothing was going on and that he parked in front of the residence simply because he could. He insisted that he did not knock on his girlfriend's door and claimed not to know why she called the police. Officer Butt again asked for his name, but the defendant claimed that he did not have to provide his name because he had not committed any crime. Officer Butt informed the defendant that she was conducting an investigation and that if he failed to provide his name, he would go to jail for obstruction of identification. The defendant asked what crime he had committed. Officer Butt responded that he had committed disorderly conduct at the least. The defendant proceeded to argue with Officer Butt about what constituted the crime of disorderly conduct. He then asked for a supervisor to be present. Officer Butt again asked for the defendant's name, and he continued to refuse to provide it. The defendant then told Officer Butt that he was going to get his phone out and record their encounter. He again requested a supervisor. Officer Butt said she would get a supervisor on scene just as soon as she got the defendant's name. The defendant asked what crime he had committed. Officer Butt informed him that he was failing to identify himself, that he was

4

the suspect of her investigation, and that his girlfriend reported him. The defendant again asked what crime he had committed. Officer Butt responded that the defendant knew what he had done.

¶ 10     Officer Butt then asked the defendant to exit the vehicle multiple times. The defendant did not do so and instead continued to request a supervisor. Officer Butt attempted to open the driver's side car door from the outside, but it did not open. The defendant pulled out his cell phone, informing Officer Butt that he was preparing to Facebook Live record their interaction. Officer Butt told him that she did not care but that he needed to exit the vehicle because he was failing to identify himself. The defendant again asked what crime he had committed. Officer Butt responded that he had failed to identify himself. She again asked him to step out of the vehicle. He again asked what crime he had committed. She responded that she had already told him that, that he was the suspect of her investigation, and that he needed to identify himself. The defendant asked what he was suspected of. She answered, "remove subject" and disorderly conduct. The defendant began to record on Facebook Live. Officer Butt again asked the defendant to identify himself. Instead, the defendant began speaking on his Facebook Live.

¶ 11     By this time, Officer Garcia had moved to stand next to Officer Butt. He also told the defendant to identify himself. The defendant again asked what crime he had committed. Officer Garcia informed the defendant that he had committed the crimes of disorderly conduct and harassment via text message. The defendant insisted that he had not committed these crimes and requested a supervisor on scene. Officer Butt again asked the defendant to identify himself. Again, the defendant asked what crime he had committed. Officer Garcia reminded the defendant that he had just been told. Officer Butt again asked for the defendant to step out of the vehicle and identify himself; the defendant again asked what crime he had committed. Officer Butt told him that he would be assisted out of the vehicle if he failed to step out and identify himself. The defendant

5

continued to ask what crime he had committed. The officers continued to remind him that he had already been advised of that.

¶ 12    When the defendant reverted back to asking for a supervisor on scene, Officer Butt told him that their supervisor was en route, but the defendant needed to exit his vehicle. The defendant refused to do so. Officer Butt then reached into the vehicle and unlocked and opened the driver's side door. The defendant refused to step out of the vehicle and instead insisted he had not been told what crimes he had committed. Officer Garcia told the defendant that he was now also resisting the officers' verbal commands to step out of the vehicle and identify himself. The defendant continued to insist that he had not committed any crimes and that the officers had not informed him of any crimes he had committed. After some back and forth on this subject, Officer Butt told the defendant that he was about to go to jail. The defendant again asked for a supervisor. Officer Butt told the defendant that until their supervisor arrived, the defendant needed to exit his vehicle because he was going to be handcuffed. She then told him that he could either get out on his own or be assisted out.

¶ 13    After the defendant once again refused to exit on his own, Officer Butt grabbed the defendant's left wrist. The defendant asked what he was being arrested for as Officer Butt locked a handcuff around his left wrist. Officer Butt repeated that the defendant had already been told that the charges were disorderly conduct and harassment, on top of now resisting arrest. The defendant protested and denied committing disorderly conduct. Officer Garcia reached his left arm into the vehicle, grabbed the defendant's right wrist, and tried to pull the defendant out of the car. At first, the defendant was very slightly pulled forward. Then, he appeared to pull his arm backwards, using force to remain in the vehicle. Due to this force, Officer Garcia then used both of his hands to pull the defendant forward. However, the defendant again pulled himself backwards to remain inside

6

the vehicle, appearing to brace himself with his feet. At this time, Officer Butt tried to take the defendant's phone from his hands but was unsuccessful. Officer Garcia again used both hands to pull the defendant forward. It was clear from the video both that the defendant was exerting effort to remain where he was and that Officer Garcia had to use some force to overcome this effort and pull the defendant forward. The defendant again pulled himself backwards, and in fact, pulled Officer Garcia towards him. This struggle continued for some seconds, with Officer Garcia attempting to pull the defendant forward, and the defendant pulling himself backwards. At one point in the video, the defendant's feet could clearly be seen bracing under the steering wheel.

¶ 14    The defendant asked what he was being arrested for as he pulled backwards, again pulling Officer Garcia towards him. Officer Garcia responded that he had already explained the charges to the defendant. Officer Garcia then attempted to pull the defendant out with both hands, and the defendant's feet could again clearly be seen bracing under the steering wheel as he exerted effort to remain in the vehicle. Officer Garcia told the defendant to stop resisting. The defendant countered that he was not resisting. Officer Garcia asked him what he was doing at that moment, if not resisting. The defendant then asked what he was resisting, and what crime he had committed. He insisted that the officers had not yet told him what crime he had committed. All this time, Officer Garcia's hands were on the defendant's right wrist, and he could be seen futilely pulling as the defendant exerted effort to remain in the vehicle. The officers then entreated the defendant to exit the vehicle as he continued to ask what crime he had committed and insisted he had not committed one. The defendant then again asked for a supervisor.

¶ 15    On the other side of the car, another officer was seen; he opened the passenger side car door. A supervisor could be heard behind Officers Butt and Garcia introducing himself and instructing the defendant to step out of the car. The defendant did not do this but instead asked

7

why Officer Butt had a handcuff on his wrist. Officer Butt informed the defendant that she did so because he was under arrest. The defendant asked what he was under arrest for. Officer Butt responded that he had already been told. The supervisor clarified with the defendant whether the officers had told him the charges laid out against him. The defendant said that Officer Butt had cited a couple of charges, but they were incorrect. The supervisor responded that he would not argue the case with the defendant and that the defendant needed to exit the vehicle at this time. The defendant continued to argue the merits of the charges against him. Officer Garcia attempted to explain that he was only making the situation worse. He then told the defendant that officers could "order you in or out of a car at any opportunity for any reason [they] want to, and it's an offense for you to refuse to do that." Officer Garcia once again asked the defendant to step out of the car. The defendant did not do so but instead played on his phone and answered a phone call. Officer Garcia again asked the defendant to step out of the car, reminding the defendant that he had been asked to do this multiple times. The defendant ignored Officer Garcia and continued his phone call.

¶ 16    The defendant then reverted to combatting the merits of the disorderly conduct charge against him and insisted he was being arrested for no reason. Officer Garcia told the defendant that he did not have to agree with the charges, explained the charges once again, and informed him that resisting and obstruction charges could be forthcoming if he continued to refuse to exit his vehicle. The defendant ignored this and opened Facebook Live on his phone. Officer Garcia quickly grabbed the defendant's phone from his hand and placed it on the roof of the car. Officer Garcia then put both hands around the defendant's right wrist, and he and Officer Butt pulled the defendant out of the car with some force. It was clear in the video that at least four separate officers were present. Officer Garcia told the defendant to put his hands behind his back, and Officer Butt

fully handcuffed him. Officer Garcia reassured the defendant that all the officers' body cameras were on. The defendant told the officers that they were in trouble. The defendant continued to ask what he was being arrested for as the officers escorted him away and told him he had already been told. The video ended there.

¶ 17    The defendant, proceeding *pro se*, testified in his own defense. He testified that, on the night of the incident, he and his girlfriend, Ms. Post, had gotten into an argument via text message. He informed Ms. Post that he would be driving to her residence. En route to her residence, he was stopped by Officer Butts, pulled out of his vehicle, and arrested for disorderly conduct and trespass. He alleged that the current resisting arrest charge was being prosecuted in retaliation for his questioning the officers during this incident. The defendant insisted that he had not committed disorderly conduct or trespass that night. He confirmed that he did not identify himself or exit his vehicle voluntarily despite being asked to do so multiple times that evening. He also confirmed that the officers attempted to assist him out of the vehicle and that he pulled back away from them. He further confirmed that he had been informed that he was under arrest and of the charges against him.

¶ 18    During closing arguments, the defendant openly admitted to the charge against him, stating, "I did resist. The State is right. I did resist when [Officer Butt] kept telling me that I was arrested for a charge that I did not do." The jury returned a verdict of guilty, and the sentencing hearing proceeded on April 29, 2022. The defendant was subsequently sentenced to 12 months of conditional discharge, a $200 fine plus applicable court costs, 100 hours of community service work to be completed within the first 6 months, and 2 days in the county jail with credit for 2 days served.

¶ 19    On May 2, 2022, the defendant filed a notice of appeal. An amended notice of appeal was filed on May 16, 2022.

¶ 20                                        II. ANALYSIS

¶ 21    On appeal, the defendant makes two contentions. First, he argues that the evidence in this case was insufficient to convict him of resisting a peace officer. Second, he argues that the trial court failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before allowing him to waive his right to counsel and proceed *pro se*. We disagree with both arguments.

¶ 22                              A. Sufficiency of the Evidence

¶ 23    The defendant argues that the evidence was insufficient to prove that he possessed the requisite knowledge to resist arrest or that his actions constituted material resistance. When a defendant challenges the sufficiency of the evidence, the reviewing court must look at the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Pollock*, 202 Ill. 2d 189, 217 (2002). "When presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant." *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The credibility of the witnesses, the weight to be given their testimony, and the resolution of any conflicts in the evidence are within the province of the trier of fact, and a reviewing court will not substitute its judgment for that of the trier of fact on these matters. *People v. Brooks*, 187 Ill. 2d 91, 131 (1999). On review, great deference is given to the findings of the jury, which, as the trier of fact, is in a much better position to determine the witnesses' credibility and the weight to be accorded to their testimony. *People v. Shaw*, 2015 IL App (1st) 123157, ¶ 20. However, "we give less deference to a trial court's

10

determinations of fact when they are based on evidence other than live witness testimony," such as video recordings. *Id.* ¶ 29.

¶ 24 Following a finding of guilt, on review, all reasonable inferences in the record will be made in favor of the State. *People v. Cunningham*, 212 Ill. 2d 274, 280 (2004). So long as *any* rational trier of fact could have found guilt established beyond a reasonable doubt, it is irrelevant on review whether the reviewing court itself believes such guilt was proven. *Jackson*, 443 U.S. at 319. However, this deference to the trial court only extends to reasonable conclusions; if a court's conclusion is unreasonable, and "only one conclusion may reasonably be drawn from the record, a reviewing court must draw it even if it favors the defendant." *Cunningham*, 212 Ill. 2d at 280.

¶ 25 Here, the defendant was charged with resisting a peace officer in that he knowingly pulled away from Officer Butt when she attempted to arrest him. See 720 ILCS 5/31-1(a) (West 2020). To sustain a guilty conviction on this charge, the State must prove that the defendant (1) knowingly resisted the performance (2) by one known to the defendant to be a peace officer (3) of any authorized act within her official capacity. *Id.*; *People v. Baskerville*, 2012 IL 111056, ¶ 32. The defendant claims that the evidence adduced at trial was insufficient to support a conviction of resisting a peace officer in that it was not proven that he possessed the requisite knowledge to resist arrest or that his actions constituted material resistance. We disagree.

¶ 26                                     1. Requisite Knowledge

¶ 27 First, the defendant claims that there was insufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that the defendant possessed the requisite knowledge to resist arrest under section 31-1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/31-1(a) (West 2020)). The defendant argues that the evidence was not sufficient to prove that he knew Officer Butt was attempting to carry out an authorized arrest. However, while "[o]ne cannot knowingly

11

resist an arrest until one knows that [an arrest] is occurring," whether the defendant believed that arrest to be authorized or unauthorized is irrelevant, as, "[u]nder section 7-7 of the Criminal Code of 2012 (720 ILCS 5/7-7 (West 2018)), '[a] person is not authorized to use force to resist an arrest which he knows is being made *** by a peace officer *** even if he believes that the arrest is unlawful and the arrest in fact is unlawful.' Accordingly, an arrest is considered an 'authorized act' for the purposes of section 31-1 even if it was an unlawful arrest." *People v. Borders*, 2020 IL App (2d) 180324, ¶¶ 54, 51. Thus, in order for the requisite knowledge element to be met, the evidence need only be sufficient enough for a rational trier of fact to conclude that the defendant knew Officer Butt was attempting to carry out an arrest, whether authorized or unauthorized.

¶ 28    Although the intention to arrest must be communicated, and the defendant's understanding of that intent is a factor to be considered, the statement, " 'you are under arrest' " is not absolutely necessary to create the knowledge that one is being arrested. *Borders*, 2020 IL App (2d) 180324, ¶ 56. The test is not what defendant subjectively thought, but what a reasonable man, innocent of any crime, would have thought, had he been in defendant's shoes. *Id.* In this case, there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that a reasonable, innocent man in the defendant's position would have known officers were attempting to carry out an arrest. Officer Butt told the defendant that if he failed to provide his name, he would go to jail for obstruction of identification. Both officers asked the defendant to exit the vehicle a countless number of times. Officer Garcia informed the defendant that he was being charged with the crimes of disorderly conduct and harassment via text message.

¶ 29    Also, both officers informed the defendant that he would be assisted out of the vehicle if he failed to step out and identify himself. Just before Officer Butt took the defendant's arm for the first time, she told the defendant that he was about to go to jail and that, until their supervisor

12

arrived, he needed to exit his vehicle because he was going in handcuffs. Additionally, as Officer Butt locked a handcuff around the defendant's left wrist, the defendant specifically asked what he was being arrested for, a statement which tends to confirm that the defendant subjectively knew he was being arrested. Since a rational trier of fact could conclude beyond a reasonable doubt that the defendant knew an arrest was being attempted, the evidence is sufficient to prove that the defendant had the requisite knowledge to resist.

¶ 30                                          2. Material Resistance

¶ 31    Second, the defendant claims that there was insufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that his actions constituted material resistance under section 31-1(a) of the Code (720 ILCS 5/31-1(a) (West 2020)). Resistance is any physical act that *actually* hinders or impedes the performance of an officer's duties. *Baskerville*, 2012 IL 111056, ¶ 25. "While an act might hinder or impede an official act in the technical sense, that hindrance or impediment may be so minimal as to not be considered a violation of the statute in question." *People v. Mehta*, 2020 IL App (3d) 180020, ¶ 21. " '[M]ere argument with a policeman about the validity of an arrest or other police action' " cannot constitute resistance under the statute. *Baskerville*, 2012 IL 111056, ¶ 20 (quoting *People v. Raby*, 40 Ill. 2d 392, 399 (1968)). Nor can "mere failure to cooperate with an officer" constitute resistance under the statute. *People v. Stoudt*, 198 Ill. App. 3d 124, 127 (1990).

¶ 32    The defendant first claims that "mere verbal disagreement" is all that is at issue in his case. However, the State's charging instrument hinges not on the several minutes of verbal disagreement between the officers and the defendant, but on the defendant's "pulling away from" the officers after they attempted to arrest him. The defendant claims that the video evidence in this case "does not show any physical act of resistance committed by [him]." However, after having viewed this

13

video, this court must disagree. The video shows the defendant repeatedly pulling his arm backwards and bracing his feet inside the vehicle. In addition to the video, there was sufficient evidence presented at trial for a rational trier of fact to conclude beyond a reasonable doubt that physical acts took place which constituted material resistance. Officer Garcia testified that the defendant "pulled away from officers after continuous attempts to assist him out of the vehicle" and "braced his feet inside the vehicle to prevent himself from being removed." The defendant himself confirmed on the stand that the officers attempted to assist him out of the vehicle and that he pulled back away from them.

¶ 33    In the alternate, the defendant claims that any physical acts which took place were *de minimis* in that they did not materially hinder or impede the officers in the performance of their official duties, and thus did not constitute resistance under the statute. "[T]he length of any delay or the brevity of any impediment is a factor, if not the primary factor, in determining" whether a defendant's actions have materially hindered or impeded officers in the performance of their official duties. *Mehta*, 2020 IL App (3d) 180020, ¶ 32. However, it is not the only factor. *Id.* The threat posed by the actions to officers' safety can also factor into whether or not the actions materially hindered the performance of the officers' duties. *People v. Gotschall*, 2022 IL App (4th) 210256, ¶ 29.

¶ 34    Here, there is insufficient evidence that the defendant's actions threatened officers' safety. However, there is sufficient evidence that the delay between when the arrest was first set out upon and the completion of that arrest was appreciable, and thus hindered the officers' performance of their duties. From the time the officers first attempted to hoist the defendant out from his vehicle to when they were finally successful in their endeavor, over four minutes had passed. Additionally, the entire interaction took 12 minutes from start to finish. Other details about the case also serve

as evidence that the defendant's actions tended to materially hinder or impede the officers in the performance of their duties. In the end, in order to carry out the defendant's arrest, Officer Butt required the assistance of at least three other officers, only one of whom was first present with her on the scene, and at least two of whom were called to the scene in response to the defendant's initial noncooperation. Altogether, there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt that the defendant's actions materially hindered or impeded the officers in the performance of their official duty, namely, arresting the defendant.

¶ 35    Thus, as the evidence was sufficient to prove both the physical nature of the defendant's actions, as well as their significantly hindering effect on the officers' performance of their duties, there was sufficient evidence for a rational trier of fact to conclude beyond a reasonable doubt that the defendant's actions constituted material resistance.

¶ 36    The defendant argues that this case is similar to our previous holding in *People v. Flannigan*, 131 Ill. App. 2d 1059 (1971). In *Flannigan*, this court held that, where a defendant refused to exit his vehicle after being told that he was under arrest and temporarily put his car keys out of the reach of the officer attempting to retrieve them, his conduct was "at most an insubstantial display of antagonism or belligerence," and did not constitute material resistance. *Id.* at 1063. However, *Flannigan* is not similar to the case at bar. In *Flannigan*, the only physical act of resistance alleged was defendant temporarily putting his keys out of reach. This act was extremely temporary, as only a moment later, defendant brought the keys within reach again, and the officer was able to retrieve them. *Id.* at 1060. The only other act of resistance alleged in *Flannigan* was defendant's verbal refusal to immediately exit his vehicle voluntarily. *Id.* The officer in *Flannigan* "asked defendant two or three times to get out of the car and when defendant did not do so immediately, [the officer] reached in and took defendant from the car." *Id.* Critically, unlike in the

15

present case at bar, *no* physical resistance was alleged in *Flannigan*. In fact, uncontroverted witness testimony in *Flannigan* established that "the whole incident lasted perhaps one minute," and was thus "an insubstantial display." *Id.* at 1062-63.

¶ 37    In contrast, the conduct in the case at bar was not similarly "insubstantial." The entire incident lasted 12 minutes long. While defendant in *Flannigan* was only asked "two or three times to get out of the car" by one officer, the defendant here was asked a countless number of times to do the same by at least three different officers. *Id.* at 1060. Critically, while here, it took at least four officers to get the defendant out of his vehicle due to his alleged acts of physical resistance, in *Flannigan*, due to the uncontroverted lack of physical resistance, it took only one officer. *Id.*

¶ 38    Since there was sufficient evidence for a rational trier of fact to find beyond a reasonable doubt both that the defendant had the requisite knowledge to resist and that his actions constituted material resistance, we conclude a rational trier of fact could find the defendant guilty beyond a reasonable doubt. The defendant's sufficiency of the evidence claim thus fails.

¶ 39                                B. Invalid Waiver of Counsel

¶ 40    Second, the defendant argues that the trial court failed to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before allowing him to waive his fundamental right to counsel.

¶ 41    The defendant's arraignment took place on September 28, 2021. Pursuant to Rule 401(a), the trial court explained the nature of the charges against him as well as the possible penalties for each charge. When asked if he wanted time to hire an attorney, the defendant responded that he wanted to represent himself. The court then read several admonishments regarding the defendant's right to an attorney and decision to represent himself. After these admonishments had been read, the defendant confirmed his decision to proceed *pro se*.

16

¶ 42    The defendant was again admonished regarding his right to an attorney during the December 20, 2021, hearing on the motion to dismiss. The trial court even provided examples of the defendant's lack of legal training in an attempt to further explicate the disadvantages of proceeding *pro se*. The court then inquired into the defendant's level of education and legal experience. The defendant demonstrated that he understood the possible penalties in the case, commenting that he "might face a year maximum, at most," if he went to trial and lost. The court subsequently found that the defendant was knowingly, intelligently, and voluntarily waiving his right to counsel, per Rule 401(a).

¶ 43    During a February 17, 2022, hearing, after the trial court had concluded that everything was ready to proceed to trial, the defendant requested time to retain an attorney. Despite the inconvenient timing of the request, the court honored this and granted a continuance for this reason. Just after the continuance had been granted, the defendant revoked his earlier request and again insisted that he would proceed *pro se*. The court then readvised the defendant of the nature of the charges he faced and the possible penalties for each charge. Before this admonishment could be finished, the defendant again requested time to retain an attorney. The court again honored this request and granted a continuance for this purpose. The court even encouraged the defendant in this decision to exercise his right to an attorney. The court informed the defendant that, if he qualified financially, the court would appoint a public defender to represent him. After this, the defendant again revoked his request for time to retain an attorney and insisted that he would proceed *pro se*. Only a short while after that, the defendant asked the court if he could apply for a public defender. The court ascertained that the defendant financially qualified for representation by the public defender's office, and appointed counsel to represent the defendant. The case was then continued.

17

¶ 44　On March 23, 2022, a hearing proceeded on the defendant's motion for leave to withdraw counsel. Pursuant to Illinois Supreme Court Rule 401(a) (eff. July 1, 1984), the trial court admonished the defendant regarding his right to an attorney and decision to represent himself. The court then inquired into the defendant's age, education, legal experience, and understanding. The court encouraged the defendant to retain his attorney instead of proceeding *pro se*. The court noted that it had previously explained to the defendant the nature of the charges, the possible penalties, and his right to an attorney. The court concluded that the defendant understood all of this and was knowingly, intelligently, and voluntarily waiving his right to counsel in proceeding *pro se*. The defendant then proceeded *pro se* at his trial.

¶ 45　Subsequently, at the defendant's sentencing hearing on April 29, 2022, the trial court again confirmed with the defendant that he wished to represent himself, reminding him that "we've been through this many times" and directing him to "the admonishment [the court] provided to [the defendant] previously about the advantages and disadvantages of choosing to represent [himself]." The defendant then confirmed his decision to proceed *pro se*, and represented himself at his sentencing hearing.

¶ 46　At the outset, we recognize that the defendant failed to raise this alleged error in a posttrial motion. Although this would normally result in a forfeiture of the issue, in this case, "[b]ecause the right to counsel is fundamental, an appellate court may review a failure to substantially comply with Rule 401(a) under the plain-error doctrine despite a defendant's failure to properly preserve such an error." *People v. Vazquez*, 2011 IL App (2d) 091155, ¶ 14. The plain-error doctrine allows a reviewing court to consider an unpreserved error when (1) a clear or obvious error occurs, and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against defendant, regardless of the seriousness of the error; or (2) a clear or obvious error occurs and that

error is so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). Here, the defendant argues that the alleged Rule 401(a) error satisfies the second prong of the plain-error doctrine in that this error was so serious it affected the fairness of his trial and challenged the integrity of the judicial process.

¶ 47    The Constitution of the United States guarantees a defendant's right to the assistance of counsel as well as his right to proceed without counsel. U.S. Const., amend. VI; *People v. Wright*, 2017 IL 119561, ¶ 39. Indeed, "a court must honor a defendant's knowing and intelligent election to proceed *pro se*, even if the court considers the decision unwise." *People v. Haynes*, 174 Ill. 2d 204, 245 (1996). However, this election *must* be voluntary, knowing, and intelligent. *Id.* at 235. A trial court that allows a defendant to represent himself without first knowingly and intelligently waiving his right to counsel commits reversible error. *People v. Jiles*, 364 Ill. App. 3d 320, 328-30 (2006). In Illinois, a knowing and intelligent waiver of counsel can only occur following a court's substantial compliance with Illinois Supreme Court Rule 401(a). *People v. Campbell*, 224 Ill. 2d 80, 87 (2006); Ill. S. Ct. R. 401(a) (eff. July 1, 1984). Rule 401(a) details the admonishments that the court *must* give a defendant before he waives counsel:

> "(a) Waiver of Counsel. Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
>       (1) the nature of the charge;
>       (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>       (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 48    While the trial court must comply with Rule 401(a) for an effective waiver of counsel, "strict, technical compliance with Rule 401(a) *** is not always required." *Wright*, 2017 IL

19

119561, ¶ 41; see *People v. Baker*, 94 Ill. 2d 129, 137 (1983). Substantial compliance with Rule 401(a) will be sufficient to effectuate a valid waiver so long as the record shows that the waiver was voluntarily, knowingly, and intelligently made, and "the sole admonishment that [defendant] did not receive in no way prejudiced his rights." *Wright*, 2017 IL 119561, ¶¶ 41, 44. A reviewing court determines whether a defendant knowingly waived his right to counsel based on the specific facts and circumstances of the case at hand. *Id.* ¶ 54.

¶ 49    Firstly, both parties agree that the trial court properly admonished the defendant pursuant to Rule 401(a) when it allowed him to proceed *pro se* earlier in the pretrial proceedings.

¶ 50    The defendant was admonished on the nature of the charges, the possible penalties, and his right to counsel on two separate occasions, during his arraignment on September 28, 2021, and during the hearing on his motion to reconsider on February 17, 2022. Additionally, the defendant was admonished several times by the judge about his right to an attorney and the disadvantages of proceeding *pro se*. However, the last time the defendant waived his right to counsel and elected to proceed *pro se*, the court did not fully readmonish him on the nature of his charges and the potential penalties associated with them. Instead, the court noted that it had previously explained these elements to the defendant and elected only to readmonish him regarding his right to an attorney and decision to represent himself. The defendant contends that, in forgoing the full readmonishment on this last occasion, the court failed to substantially comply with Rule 401(a) before allowing him to waive his right to counsel.

¶ 51    However, the caselaw regarding substantial compliance with Rule 401(a) is clear. Although "[i]t would have been preferable for the trial judge accepting the waiver to admonish the defendant in accordance with Rule 401(a) at the time he accepted the defendant's waiver of counsel," such a failure only constitutes an error and does not necessarily preclude substantial compliance with the

20

rule. *Haynes*, 174 Ill. 2d at 242; see *People v. Johnson*, 119 Ill. 2d 119, 138 (1987). Indeed, in determining substantial compliance with Rule 401(a), courts do not "solely focus on the admonishments given at the time that the defendant waived counsel for the final time." *People v. Ware*, 407 Ill. App. 3d 315, 344-45 (2011). Instead, they also look at "the previous admonishments and *** facts throughout the record." *Id.* at 345. In *Haynes*, the trial court gave defendant complete Rule 401(a) admonishments a number of weeks prior to defendant's waiver and failed to repeat those admonishments at the time of the waiver. *Haynes*, 174 Ill. 2d at 240. The appellate court in *Haynes* found that the trial court had substantially complied with Rule 401(a) where its prior admonishments were complete and given at a time when defendant had indicated a desire to waive counsel. *Id.* at 241.

¶ 52 In *Ware*, although the trial court gave defendant complete Rule 401(a) admonishments the first two times defendant switched to representing himself from being represented by counsel, the third and final time this happened, it did not give the admonishment. *Ware*, 407 Ill. App. 3d at 331. The *Ware* court found that, despite this, when it considered the record as a whole, the trial court had substantially complied with Rule 401(a) where its earlier admonishments contained all of the required information and defendant was aware of the information contained in them. *Id.* at 347. In the present case, although a complete Rule 401(a) admonishment was not given at the time of the defendant's final waiver, two of the previously administered admonishments were complete, and the record shows the defendant knew and understood the elements that were left out of the final admonishment.

¶ 53 The defendant would have us rely on *People v. Martin*, 2021 IL App (4th) 180267, in order to determine the meaning of substantial compliance; however, the scenario in *Martin* is not on point here and is distinguished from the case at bar. In *Martin*, the trial court properly admonished

21

defendant pursuant to Rule 401(a) during pretrial proceedings but failed to do so when defendant waived his right to counsel during the sentencing stage after having been represented by counsel for some time during that stage. *Id.* ¶ 34. The *Martin* court concluded that, because "there was *never* an admonishment about the nature of the charge nor the minimum and maximum possible penalties of the offense at [this] separate, critical stage of the proceedings," the trial court did not substantially comply with Rule 401(a) when it allowed defendant to waive his right to counsel during sentencing. (Emphasis in original.) *Id.* ¶ 35.

¶ 54 Here, the defendant argues that the relevant fact is that the *Martin* defendant was represented by counsel in between waivers, much like in the case at bar. However, in reading *Martin*, it is clear that the relevant fact is actually that defendant's waivers happened in entirely separate stages of the proceedings, unlike in the case at bar, where all waivers happened in the same pretrial stage of the proceedings. Unlike in *Martin*, the defendant here was properly admonished multiple times within the same stage of proceedings during which his final waiver took place. Thus, *Martin* is inapplicable here. Accordingly, although it was an error for the trial court not to fully comply and properly admonish the defendant pursuant to Rule 401(a) at the time of his last waiver of counsel, the prior admonishments the defendant received were sufficient to constitute substantial compliance with Rule 401(a).

¶ 55 In order for substantial compliance with Rule 401(a) to be sufficient to effectuate a valid waiver, the record must show that the waiver was voluntarily, knowingly, and intelligently made, and the sole admonishment that defendant did not receive must in no way have prejudiced his rights. See *Wright*, 2017 IL 119561, ¶¶ 41, 44. In the case at bar, the record shows that the defendant's waiver was voluntarily, intelligently, and knowingly made. The defendant demonstrated that he understood the nature of the charges and their possible penalties when he

22

commented that he "might face a year maximum, at most," if he went to trial and lost. The defendant demonstrated his awareness of his right to counsel by exercising his right with the appointment of a public defender. Additionally, the record decisively establishes that the defendant knowingly and voluntarily waived his right to counsel. On several occasions, the trial court discouraged the defendant from proceeding *pro se*, and even on one occasion went so far as to provide examples of the defendant's lack of legal training in order to explicate the disadvantages of proceeding *pro se*. The court actively encouraged the defendant to exercise his right to counsel and retain an attorney and granted continuances expressly for this purpose even when inconvenient in timing. Still, the defendant remained steadfast in his intention to represent himself. His waiver of counsel was clear, unequivocal, and entirely voluntary.

¶ 56    Additionally, the trial court's failure to fully admonish the defendant before he ultimately decided to proceed *pro se* did not prejudice his rights. There is no evidence that an additional, complete Rule 401(a) admonishment at the time of the defendant's final waiver would have altered his decision to proceed *pro se*. In fact, there is evidence to the contrary, suggesting that, even if such an admonishment had occurred, the defendant would have remained steadfast in his decision to represent himself. From the beginning of the court proceedings in this case, the defendant expressed a desire to represent himself and remained steadfast in that desire even after being advised by the court of the potential pitfalls of doing so. In fact, before accepting the defendant's final waiver, the court specifically encouraged the defendant to retain his attorney instead of proceeding *pro se*. This specific admonishment did not alter the defendant's decision, and there is no evidence a more complete admonishment on the nature of the charges or their potential penalties, both admonishments the defendant had already heard before, would have made any

23

difference. Thus, the admonishment that the defendant did not receive in no way prejudiced his rights.

¶ 57 Thus, although the trial court failed to fully readmonish the defendant pursuant to Rule 401(a) at the time of his final waiver of counsel, the trial court still substantially complied with Rule 401(a), the defendant's waiver was made knowingly, voluntarily, and intelligently, and the sole admonishment the defendant did not receive in no way prejudiced his rights. As a result, the trial court's substantial compliance with Rule 401(a) was sufficient to effectuate a valid waiver of counsel. Therefore, the trial court's error was not so serious as to affect the fairness of the defendant's trial or challenge the integrity of the judicial process. The defendant's invalid waiver of counsel claim fails.

¶ 58                                III. CONCLUSION

¶ 59 As a rational trier of fact could have found beyond a reasonable doubt both that the defendant possessed the requisite knowledge to resist a peace officer under section 31-1(a) of the Code (720 ILCS 5/31-1(a) (West 2020)) and that the defendant's actions constituted material resistance, the evidence is sufficient to support a verdict of guilty of resisting a peace officer. As the trial court did not fail to substantially comply with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before allowing the defendant to waive his fundamental right to counsel and proceed *pro se*, the defendant's waiver of counsel was valid. Accordingly, the judgment of the circuit court of Champaign County is affirmed.

¶ 60 Affirmed.